193 So. 155

**UNDERWOOD v. STATE.**

**4 Div. 65.**

Supreme Court of Alabama.

Dec. 14, 1939.

Rehearing Denied Jan. 25, 1940.

John C. Walters and T. L. Borum, both of Troy, for appellant.

Thos. S. Lawson, Atty. Gen., for the State.

THOMAS, Justice.

The first exception challenged the action of the trial court as to a portion of the oral charge to the effect that the defendant, Sam Underwood, had possession of the deceased's pistol. When the record evidence is looked to, this fact was established. When the context of the oral charge is understood, the court was warranted in so instructing the jury.

The physician described the wounds as "stabs or cuts,"—knife signs on deceased's face and neck, a large hole made with a blunt instrument in his skull.

The jury may have inferred that the injuries on the victim's head were inflicted with a knife and brick in evidence: the human skin, hair or blood on the brick was to that effect.

The toxicologist, as a witness, examining the brick found at the body, testified that: "I examined the brick. I found blood, hair and skin, minute quantities on that brick. Yes, sir, I found blood, hair and skin in minute quantities. I examined it with chemicals and with the microscope. There were 17 small, short hairs of a slightly brownish color, with blood mixed intimately with it. The skin particles were also in the same clots, firmly attached to the surface of the brick. They were human hair from the eyebrow, or eye lash. Yes, sir, they were human hair from the eyebrow,

or the eyelash. From my examination, I could not tell whether it was human blood, or not. * * * It requires approximately a drop of blood that can be recovered in a pure state, without impurities. Yes, sir, I have to have at least a drop of blood to ascertain whether it was human blood or not. There was not as much as a drop of blood on that brick."

There was no error in overruling defendant's motion to exclude the evidence as to the brick in question. When related to the physical condition of the body as detailed by the doctor, this evidence was material, connecting the assailant with the use of the brick in the commission of the crime, making wounds on deceased's head and brow.

The witness Leverett testified: "I went to his house sometime after July 24th, 1938. Ben Reeves and Burr and myself went. I found something there. I found a pistol. I found a hammer and a screwdriver. I found it fifteen yards from Sam Underwood's house. In a northeast direction. That is towards the back of the house. The pistol was buried. It was buried in a croker sack, wrapped up in a croker sack, stuck down in a hole. The hole was about four inches deep. That is the pistol that I found. That is the one that was buried in the sack. * * *."

The evidence showed that the pistol was the property of deceased, and that he carried it to his work as night-watchman, where he was killed.

As a witness, the sheriff testified on this question, as follows: "I asked him about the killing of Giff Braddy and he said he was in it and he said he helped kill him and then I questioned him as to where the things were that Mr. Braddy had lost, especially the pistol and he told me that they were hid about ten or fifteen steps back of his house in a corn field right straight back of his house and that they were buried in a shallow place in this croker sack; that there was a hammer and screwdriver with the pistol and that he had been working on the pistol and had that hammer and screwdriver down there to fix it, and that it was the pistol that he took off of Giff Braddy. He told me he took it off of him the night Braddy was killed. Sam said that Freeman Wood, Alta Bradberry and Ager Key, and that there was a woman with them, but that the woman didn't have anything to do with the actual killing. The woman went under two names, Maude Hardwick and Maude Bradberry. Well, he said they were all with him, that he hit him first with a brick and that they all hit him with the brick and that Ager Key cut him; he said they all helped to kill him. * * *."

This undisputed evidence warranted the trial judge in making the statement to the jury to which exception was taken, as to defendant's having possession of the pistol of the deceased.

The trial court, in the general charge to the jury, said: "Now, gentlemen, before we enter upon the testimony here: anything said to you today in argument of counsel does not control, and the suggestion of a mistrial in this case is improper. It is the duty of the jury to return a verdict and not mistry the case unless they honestly disagree on a verdict."

This observation was proper and the exception thereto taken by defendant's counsel is not well founded. The court was merely instructing the jury as to their duty, after a consideration of all the evidence, to agree upon a verdict if they could. This action of the court was not the exercise of an undue censorship over the argument of counsel for defendant.

Charge 5 is as follows: "The court charges the jury that if they believe from the evidence that Key, Bradberry and Wood willfully and intentionally *swore that they did not meet Underwood, as testified by McIntyre,* then they may discard all that they testified." [Italics supplied by this court.]

If this charge was correct, it was more than covered by the given charges.

The confession was voluntary and within the rule that obtains in Canty v. State, Ala.Sup., 191 So. 260.[1] We do not think the case is brought within the rule stated in Ballard v. State, 225 Ala. 202, 142 So. 668, that where confessions have been obtained through undue influence, the state is required to show that influence had ceased to render defendant's statements admissible in evidence.

We find no error in excusing Juror Chapman for cause. Ott v. State, 160 Ala. 29, 49 So. 810; Ledlow v. State, 221 Ala. 511, 129 So. 282; Code of 1923, § 8612.

---

[1] 238 Ala. 384.

The juror had testified that he did not think he could be convinced beyond a reasonable doubt on circumstantial evidence, etc., and that he would convict on circumstantial evidence, but would not inflict the highest penalty provided by law. The answer of juror indicated that he was within the additional grounds for challenge in certain cases in favor of the state as declared by Section 8612 of Michie's Code. O'Rear v. State, 188 Ala. 71, 66 So. 81.

There was no error to reverse as to questions sought and adduced to witnesses Bradberry and Flowers.

The negative testimony of Bradberry, Key and Wood was competent as directly illustrating defendant's statement to the arresting officer and before the jury as to the acts of defendant in the premises. The state had the right to adduce such testimony now called in argument of appellant, as "negative" as it tended to shed light upon the degree of guilt as might affect the punishment. That is to say, that others inflicted wounds, and it was for the jury to say what wounds produced the homicide. This was within the rule as to negative evidence. 6 Ala.Dig., Criminal Law, ☞387, p. 275. Moreover, it was competent under the physician's testimony as illustrating the fact as to who actually inflicted the wound that produced the death of the victim.

Thus we are brought to the insistence of error that a full and free right of cross-examination of Arter (or Alta) Bradberry was denied by the court. When the whole evidence of that witness is examined, the defendant was given the right of cross-examination and the witness answered the question first propounded, to which objection was sustained.

In McDonald v. State, 165 Ala. 85, 51 So. 629, 631, the rule is thus stated: "One accused of crime may show his own innocence by proof of the guilt of another; but the evidence of the guilt of the other must relate to the res gestæ of the event."

And again:

"Where there is evidence tending to connect another with the commission of the crime with which the prisoner is charged, and the evidence adduced against the prisoner is circumstantial, the defendant may adduce any legal evidence tending to fix guilt of the offense on another and to show motive on that other's part to commit the offense. * * *

"It will be noted that a broad distinction, in respect of admissibility of evidence in this connection, is taken between matters merely hearsay, such as declarations, confessions, and flight, and evidence tending to connect, actually or circumstantially, including motive, another with the offense of which defendant is charged. * *` * *"

In this connection, it may be said, reversible error was not committed when the state was allowed to show, over defendant's objection, that Freeman Wood had visited defendant's house after Mr. Braddy was killed. Such evidence may be said to be beside the inquiry as the subsequent act of an alleged co-conspirator and accomplice. Milazzo v. State, 238 A. 241, 189 So. 907.

The rule, under the plea of insanity, is stated in Gilbert v. State, 172 Ala. 386, 56 So. 136, 137, as follows: "* * * a defendant charged with an offense cannot introduce his acts or declarations favorable to himself, as this would enable him to make evidence in his own behalf; but to this rule there are exceptions. When insanity is pleaded, the subsequent as well as previous acts or declarations of the defendant are admissible in evidence to show his true mental condition at the time of the homicide. Cawley v. State, 133 Ala. 128, 32 So. 227; McLean v. State, 16 Ala. 672; Gardner v. State, 96 Ala. 12, 11 So. 402."

When the evidence of Caroline Grubbs is considered, it in effect shows that the facts, on which her opinion of the brother's mental condition was predicated, were given. The answers: "I know he always acted crazy; he didn't act like (interrupted)," and "hasn't yet got his real mind" and "I know Sam always acted funny to me" were not excluded from the jury. There was no error in the court's rulings.

There was objection, and exception to arguments of the solicitor. Though the defendant was not a witness, the matter adverted to in argument had been given to the jury in the confession and hence there was no error in the comment by the prosecuting officer. The statement of the trial judge to counsel indicated that the remark about the sheriff's interest was provoked by defendant's counsel. In the absence of the nature of that provocation, we cannot attribute error to the action of the trial court in not restraining counsel or in failing to exclude the remark. The observation of counsel as to the care

required under the law in selection of the jury in such a case was not fraught with error. The court may not unduly restrain counsel in conducting the prosecution or defense of any case. This rule was duly observed by the trial court. Canty v. State, supra.

There was no error committed in the introduction of the evidence of Dr. Cowles, when his statements of the lack of knowledge or fact, on which to base an opinion, is understood.

The witness Roberts was not an expert and without the statement of the facts, that witness may not give answer to the question propounded—"From your experience and observation with him, and from your knowledge of him, and knowing him all his life, is it your opinion that his mind was sound, or unsound?" State objected to this question:

"The Court: At what time?

"Mr. Walters: I am just asking him now." Anderson v. State, 209 Ala. 36, 95 So. 171; Gardner v. State, 96 Ala. 12, 11 So. 402; Ford v. State, 71 Ala. 385.

As there are no reversible errors appearing in this record, the judgment of the circuit court is affirmed.

The date of execution of this defendant having passed pending this appeal, it is ordered by this court that Friday, the 23rd day of February, 1940, be and the same is hereby fixed as the day and date for the execution of such sentence in all respects as required by law and the orders of the trial court.

Affirmed.

Date of execution set for Friday, the 23rd day of February, 1940.

All the Justices concur, except KNIGHT, J., not sitting.

