Steven Wayne Hall, Jr., was convicted of murder made capital because it was committed during the course of a burglary. § 13A-5-40(a)(4), Ala. Code 1975. The jury, by a vote of 10 to 2, recommended that Hall be sentenced to death. The trial court accepted the jury's recommendation and sentenced Hall to death by electrocution. The Court of Criminal Appeals affirmed Hall's conviction and the sentence of death. Hall v.State, 820 So.2d 113 (Ala.Crim.App. 1999). This Court granted Hall's petition for certiorari review. See Rule 39, Ala.R.App.P., as it read before it was amended effective May 19, 2000.[1]
In his petition to this Court, Hall raises 32 issues. Hall raised many of the same issues in the Court of Criminal Appeals; that court thoroughly addressed and properly decided each of those issues. However, we will address one of those issues, in order to explain why this Court, like the Court of Criminal Appeals, finds no reversible error in regard to that issue.
Hall also raises 16 issues that he did not raise in the trial court or in the Court of Criminal Appeals. Because these issues are raised for the first time in this Court, they are subject to plain-error review.[2]
See Ex parte Powell, 796 So.2d 434, 435-36 (Ala. 2001); Ex parte Myers,699 So.2d 1285, 1296 (Ala.), cert. denied, 522 U.S. 1054 (1998). "Error is plain `if the error is *Page 154 
so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.' Haney v. State,603 So.2d 368, 392 (Ala.Crim.App. 1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925 (1993)." Ex parte Powell, 796 So.2d at 436. None of these 16 issues presented in Hall's petition has merit.
 I. Facts
The State's evidence tended to show the following. On the morning of December 15, 1991, Jessie Wiggins went to visit her neighbor, 69-year-old Clarene Haskew, a retired schoolteacher. Both women lived in McKenzie, a small town in Conecuh County. When she arrived at Haskew's house, Wiggins noticed that the telephone wire leading into the house had been cut and that the door to the porch and the kitchen door had been smashed in. Wiggins also noticed that Haskew's automobile was missing. Wiggins did not go inside Haskew's house; instead, she returned to her own home and telephoned Haskew's son, who then notified the sheriff's department.
When they arrived at Haskew's house, Conecuh County sheriff's deputies and other investigators discovered Haskew's body on the kitchen floor. The home had been vandalized and burglarized. A pentagram had been spray-painted on a kitchen cabinet, and the words "thunder struck" had been spray-painted in large letters on the kitchen floor, next to Haskew's body. Silverware and an address book had been taken from the house, and Haskew's gray 1982 Ford LTD automobile was missing. An autopsy revealed that Haskew had been shot twice in the back of the head, had suffered a number of blunt-force injuries to her head and body, and had been strangled. Forensic testimony indicated that Haskew was alive when she was shot and when the blunt-force injuries were inflicted; it was not possible to determine which injuries occurred first.
During the course of investigating Haskew's murder, authorities learned that the home of Nellie Schad, who lived about one-fourth mile from Haskew, had been burglarized sometime before 10:30 p.m. on the night of December 14. Schad's house had been ransacked. Among the items taken from Schad's house in the burglary were a .38 caliber Rossi revolver and a .410-gauge shotgun. Subsequent forensic analysis matched a bullet removed from Haskew's body to the .38 caliber revolver stolen from Schad's house.
Authorities also learned that on the evening of December 14, Steven Wayne Hall and a friend, Wayne Holleman Travis, came to Jessie Wiggins's house and asked to use her telephone. The men dialed several numbers and then left; they were on foot. Wiggins's home was approximately one mile from Haskew's home. Testimony indicated that sometime around 7:00 p.m. that evening, Hall and Travis had left Travis's parents' house on foot. Travis's parents' house was approximately one-half mile from Haskew's house.
On December 15, as a result of a "be-on-the-lookout" bulletin issued for Haskew's missing Ford LTD, authorities received information that the automobile was parked outside Paula Shiver's house in Uriah, in south Monroe County. Paula Shiver was Steven Wayne Hall's girlfriend. Testimony indicated that sometime around 5:00 a.m. that morning, Hall and Travis had driven the car to Shiver's house and had parked it in the yard, behind a camper. Travis, who stayed in the car most of the day, told Shiver that the car belonged to his sister-in-law.
At about 10:00 p.m. that evening, Monroe County sheriff's deputies arrived at Shiver's house. They saw an automobile *Page 155 
matching the description of Haskew's vehicle parked in the yard. One of the deputies approached the vehicle to verify from the license plate that the vehicle was Haskew's. After they verified that the car was Haskew's, the deputies knocked on the door of Shiver's house. Shiver answered the door and told the deputies that Hall and Travis were inside. However, while the deputies were talking with Shiver, Hall and Travis ran out of the house through the back door and ran into the woods.
The deputies used tracking dogs from a nearby prison to track Hall and Travis. The dogs tracked the two men through the woods, to the Rocky Hill community. A gunfight ensued; in the gunfight, deputies wounded both Hall and Travis. Hall was shot in the upper thigh.
While they were waiting for an ambulance, deputies searched Hall's person and found seven rounds of .38 caliber ammunition in his vest pockets. This ammunition fit the revolver stolen from Nellie Schad's house — the gun that forensic testing subsequently identified as the murder weapon. When the officers searched Travis, they found on his person five .38 caliber bullets and the keys to Haskew's stolen Ford LTD. A search of the stolen vehicle revealed a number of items stolen from Haskew's and Schad's houses, including the murder weapon.
Both Hall and Travis were indicted on charges of capital murder because the murder was committed during the course of a burglary. Travis was tried first; he was tried in Conecuh County on the charge of capital murder. He was convicted and sentenced to death.[3] Hall moved for a change of venue based on what he alleged was excessive publicity surrounding Travis's trial. The trial court granted Hall's motion and transferred the case to Monroe County for trial.
 II. Exclusion of Evidence
Hall contends that his right to a fair trial was prejudiced when the trial court did not allow him to introduce evidence indicating that his codefendant Travis had grown up in the McKenzie area where Haskew lived, that Travis had been previously charged with committing several burglaries in that community, and that on one prior occasion Travis had been arrested for stealing from Haskew. The trial court also disallowed the testimony of Johnny Cook, a fellow inmate of Travis's while Travis was incarcerated on other charges before Haskew's murder. According to Hall, Cook would have testified that while he was in prison Travis spoke of various grievances he had against certain persons in the McKenzie community, including a former schoolteacher, and of his desire to kill these individuals when he got out of prison.[4]
Hall conceded at trial that he participated in the burglary of Haskew's house. He maintained, however, that he did not participate in the killing of Haskew and did not know that Travis intended to kill her. Hall argues that evidence that he was not permitted to introduce — i.e., evidence of Travis's "pattern of escalating crimes against people in his hometown" and of Travis's prior ties to Haskew — should have *Page 156 
been admissible to show that Travis, not Hall, killed Haskew and that Hall did not intentionally participate in her death. The Court of Criminal Appeals, reviewing this claim, held that "[t]he evidence was correctly excluded because it was not relevant to Hall's innocence, i.e., it did not tend to exonerate Hall." 820 So.2d at 135.
In Ex parte Griffin, 790 So.2d 351 (Ala. 2000), this Court stated:
 "The United States Supreme Court has held that a defendant has a right to put on a defense and that that right includes the opportunity to present evidence proving that another person committed the offense for which he has been charged. See Chambers v. Mississippi, 410 U.S. 284 (1973); Washington v. Texas, 388 U.S. 14 (1967). However, this right is not absolute; instead, the trial court will have to consider the admissibility of such evidence in conjunction with other legitimate interests involved in the trial process. Chambers, 410 U.S. at 295; see also Guam v. Ignacio, 10 F.3d 608 (9th Cir. 1993). As a result, the trial court is presented with a balancing test in order to determine whether the evidence of a third party's culpability is properly admissible:
 "`The court must weigh the defendant's "strong interest in presenting exculpatory evidence" against the state's interest "in promoting reliable trials, particularly in preventing the injection of collateral issues into the trial through unsupported speculation about the guilt of another party."'
 "United States v. Johnson, 904 F. Supp. 1303, 1311
(M.D.Ala. 1995) (citations omitted). In weighing those interests, the federal courts have required the defendant to show that the evidence he is offering is probative and not merely speculation that would confuse the jury:
 "`To satisfy this balancing test, there must be "some showing of a nexus between the other party and the particular crime with which a defendant is charged." Of course, this nexus must be substantial — that is, probative — and not tenuous or merely speculative.'
"Id. (citations omitted).
 "Like the federal courts, Alabama courts have long recognized the right of a defendant to prove his innocence by presenting evidence that another person actually committed the crime. See Ex parte Walker, 623 So.2d 281 (Ala. 1992); Thomas v. State, 539 So.2d 375
(Ala.Crim.App. 1988); Green v. State, 258 Ala. 471, 64 So.2d 84 (1953); Underwood v. State, 239 Ala. 29, 193 So. 155 (1939); Orr v. State, 225 Ala. 642, 144 So. 867 (1932); Houston v. State, 208 Ala. 660, 95 So. 145 (1923); Tennison v. State, 183 Ala. 1, 62 So. 780 (1913); McGehee v. State, 171 Ala. 19, 55 So. 159 (1911); McDonald v. State, 165 Ala. 85, 51 So. 629 (1910). In addition, Alabama courts have also recognized the danger in confusing the jury with mere speculation concerning the guilt of a third party:
 "`It generally is agreed that the defense, in disproving the accused's own guilt, may prove that another person committed the crime for which the accused is being prosecuted. . . . The problem which arises in the application of this general rule, however, is the degree of strength that must be possessed by the exculpatory evidence to render it admissible. The task of determining the weight that must be possessed by such evidence of another's guilt is a difficult one.'
 "Charles W. Gamble, McElroy's Alabama Evidence § 48.01(1) (5th ed. 1996). *Page 157 
 To remove this difficulty, this Court has set out a test intended to ensure that any evidence offered for this purpose is admissible only when it is probative and not merely speculative. Three elements must exist before this evidence can be ruled admissible: (1) the evidence `must relate to the "res gestae" of the crime'; (2) the evidence must exclude the accused as a perpetrator of the offense; and (3) the evidence `would have to be admissible if the third party was on trial.' See Ex parte Walker, 623 So.2d at 284, and Thomas, 539 So.2d at 394-96."
790 So.2d at 353-54.
Here, none of the excluded evidence that Hall sought to admit related to the res gestae of the offense. Furthermore, as the Court of Criminal Appeals correctly noted, the excluded evidence would not have exonerated Hall. Even if believed by a jury, the evidence would not have excluded Hall as Haskew's killer or as an intentional participant in her murder. The theory of culpability and exoneration under which Hall sought to admit the evidence was far too speculative. It would have required jurors to infer from evidence suggesting that Travis intended to kill Haskew that Hall did not have the intent to kill Haskew. Furthermore, the tendency of this evidence to mislead the jury substantially outweighed its probative value in the case. See C. Gamble, McElroy's AlabamaEvidence, § 21.01 (5th ed. 1996). For these reasons, the evidence was properly excluded.
 III. Conclusion
We have carefully reviewed all of the issues presented in Hall's petition, in the parties' briefs, and at oral argument. We have reviewed the opinion of the Court of Criminal Appeals, and we have searched the record for plain error. We find no reversible error, plain or otherwise, in either the guilt phase or the penalty phase of Hall's trial that would warrant a reversal of his conviction or his sentence. We therefore affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
Moore, C.J., and Houston, See, Lyons, Harwood, Woodall, and Stuart, JJ., concur.
Johnstone, J., concurs in part in the rationale and concurs in the judgment.
[1] Rule 39, Ala.R.App.P., was amended, effective May 19, 2000, as to death-penalty cases.
 "The amendment removes the provision in the former Rule 39(c) that provided that a petition for a writ of certiorari to the Supreme Court in a case in which the death penalty was imposed would be granted as a matter of right. With this amendment, review of death-penalty cases will be at the discretion of the Supreme Court. The Supreme Court retains the authority to notice any plain error or defect in the proceedings under review in those cases."
"Court Comment to Amendment to Rule 39, effective May 19, 2000, as to death-penalty cases, etc." Ala.R.App.P.
[2] The petition for certiorari review in this case was filed in this Court on November 29, 1999, before the effective date of the amendment to Rule 39. See note 1.
[3] The Court of Criminal Appeals affirmed his conviction and sentence on April 18, 1997. Travis v. State, 776 So.2d 819 (Ala.Crim.App. 1997). This Court granted Travis's petition for certiorari review, and on March 31, 2000, affirmed Travis's conviction and sentence. Ex parte Travis,776 So.2d 874 (Ala. 2000).
[4] According to Cook, Travis said that the schoolteacher was a female, but he never mentioned her name.