856 So.2d 936 (2003)
Ex parte Melvin G. HODGES.
(In re Melvin Gene Hodges v. State of Alabama).
1010619.
Supreme Court of Alabama.
March 14, 2003.
*938 Floyd Likins, Jr., Opelika, for petitioner.
William H. Pryor, Jr., atty. gen., and Anne C. Adams and A. Vernon Barnett IV, asst. attys. gen., for respondent.
Bryan A. Stevenson, Angela L. Setzer, and Charlotte R. Morrison, Montgomery, for amicus curiae Equal Justice Initiative of Alabama, in support of the petitioner.
LYONS, Justice.
Melvin G. Hodges was convicted in June 1999 of murder made capital because the murder was committed during the course of a robbery in the first degree. See § 13A-5-40(a)(2), Ala.Code 1975. Hodges and others robbed a Golden Corral Restaurant in Opelika on January 4, 1998. After the robbery, Elizabeth "Beth" Seaton, a supervisor at the restaurant, was taken from the restaurant at gunpoint and later was beaten and run over by a vehicle. She died as a result of her injuries. The jury, by a vote of 8-4, recommended that Hodges be sentenced to life imprisonment without the possibility of parole, but the trial court overrode the jury's recommendation and sentenced Hodges to death.
The Court of Criminal Appeals initially remanded the case for the trial court to correct specified errors and deficiencies in its sentencing order. Hodges v. State, 856 So.2d 875 (Ala.Crim.App.2001) ("Hodges I"). On remand, the trial court complied with the Court of Criminal Appeals' directives, entered a new sentencing order, and again sentenced Hodges to death. The Court of Criminal Appeals then affirmed Hodges's conviction and sentence. Hodges v. State, 856 So.2d 875, 894 (Ala. Crim.App.2001) ("Hodges II"). This Court granted certiorari review only as to the following two issues regarding Hodges's sentence:
1. Whether the judicial override provision in Alabama's capital sentencing scheme violates the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment, in light of the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428 (2002).
2. Whether the trial court's error in restricting mitigating evidence during the penalty phase was harmless because the jurors recommended life imprisonment without parole by a vote of 8-4. In other words, should we consider whether the error caused the number of votes in favor of life imprisonment to be reduced and thereby reduced the persuasiveness of the jury's recommendation to the trial court and accordingly increased the likelihood of an override in favor of death?
The Court of Criminal Appeals stated the facts of this case as follows:
"The State's evidence tended to show the following. On January 5, 1998, two *939 hunters discovered the nude body of Beth Seaton on the side of County Road 26 in Macon County. The coroner testified that Seaton died as a result of a combination of blunt-force injuries to her head, neck, chest, and abdomen, the most significant being the crushing injuries to her chest and abdomen, which resulted from having been run over by a vehicle. Tire marks ran vertically up and down Seaton's back. A name tag from the Golden Corral Restaurant with Hodges's name on it was found near Seaton's body.
"Hodges and Seaton were coworkers at the Golden Corral Restaurant in Opelika. Seaton was a supervisor, and one of her duties was to close the restaurant. Hodges was a crew leader at the restaurant. On January 5, 1998, Trina Eady, another employee at Golden Corral, and Hodges arrived to open the restaurant. The alarm system was deactivated and the safe was open. There was no evidence of a forced entry. They telephoned police.
"An investigation led police to Marlo Murph. Murph testified at trial that Hodges suggested robbing the Golden Corral. He said that Hodges told him that Sunday night was the best time because there would be a lot of money in the safe. Murph said that Hodges got the pistol used to murder Seaton from Greg Holstick. The two planned to get to the restaurant while Seaton was closing up. According to Murph, their plans went awry. When they arrived at the restaurant they saw Seaton driving away in her van. They followed the van and were able to get Seaton to pull over. While Hodges was talking to her, Murph said, he entered the van and pointed a gun at her. The two then forced her to drive back to the Golden Corral and open the safe. Murph and Hodges then forced Seaton to drive her van around the area. Murph testified that Seaton sensed that something was going to happen; he stated that she started taking off her clothes and saying that she would have sex with them if they did not hurt her. They eventually made her pull the vehicle over. Murph testified that Hodges said that Seaton knew too much. Hodges then pulled Seaton out of the van and began hitting and choking her. Murph said that while Hodges was holding her, he hit Seaton with a pistol. Murph testified that when he realized what Hodges was going to do he walked away. He said that Hodges got into the driver's seat in Seaton's van and ran over Seaton about four times, back and forth. The two then left in Seaton's van. Murph said that they drove around for several minutes and Hodges realized that his Golden Corral name tag was missing. The two tried to return to where they had left the body, but they were lost and running out of gas. Murph said that he threw Seaton's purse out of the window near the rest area in Tuskegee and that they parked Seaton's van at Mount Olive Baptist Church. Hodges's clothes were covered in blood so he gave them to Murph to dispose of. Murph led police to where he had disposed of Hodges's clothes. Murph testified that Hodges gave him $2,500 for his part in the robbery/murder. (Murph had $1,427 in his possession at the time of his arrest.)
"Kitt Porter, Hodges's aunt, testified that, on January 5, 1998, she drove Hodges to Tuskegee. She said that he told her that police had discovered his Golden Corral name tag at the murder scene. Porter testified that Hodges admitted to her that he had robbed and killed Seaton. He told her about the murderan account that corroborated Murph's account in almost all respects.

*940 Porter testified that Hodges told her that he gave $5,000 to Murph for his part in the robbery/murder.
"Several witnesses also testified that the day after the robbery/murder Hodges had a large quantity of money. Hodges himself testified that he gave his girlfriend $600. Forensic evidence connected Hodges to the robbery/murder. A cigarette butt recovered from Seaton's van contained saliva, the DNA of which matched Hodges's. Also, at the time of Hodges's arrest he had blood on his watch and ring. Furthermore, blood found on the clothes that Murph had discarded for Hodges matched Seaton's DNA.
"Hodges testified in his own defense and offered his own version of the facts surrounding Seaton's murder. Hodges testified that he orchestrated the robbery and enlisted the help of Craig Hicks, Greg Holstick, and Marlo Murph. Hodges testified that, on the night of the intended robbery, Hicks did not show up and they had to revise their plans. He said that he planned to be at his apartment so that he would not be implicated in the robbery. He said that he wondered what was taking so long and went across the street from the Golden Corral to see what was happening. Hodges further testified that after about one hour Greg Holstick returned and said that they had to get rid of Seaton because she knew them. (Hodges had previously introduced Holstick to Seaton.) Hodges said that Holstick gave him $600. Hodges said that he was not present at the time of the robbery or the murder and that he knew nothing about the murder. He said that the State's witnesses were all lying."
Hodges II, 856 So.2d at 895-96 (footnote omitted).
Concerning the trial court's sentencing order, the Court of Criminal Appeals stated:
"The trial court found that the aggravating circumstances outweighed the mitigating circumstances. The trial court found, as aggravating circumstances, that the murder was committed during a robbery and during a kidnapping, and that the murder was especially heinous, atrocious, or cruel as compared to other capital offenses. The trial court stated:
"`The Court finds, from the evidence, as follows: The victim's nude body was found beside a rural road in Macon County. Medical and other testimony revealed that she had been beaten and choked after being abducted from the location of the robbery in her van. Blood matching her type was found inside the van and on clothing of [Hodges]. The accomplice testified that she pleaded for her life as she was being driven around naked inside the van. It is unclear as to how long she was ... driven around naked and how long she was beaten and choked before finally being dumped on the side of the road. In the view of this Court, that was extraordinarily cruel and likely generated great fear and terror in her during her last hours on this earth. She was then dumped on the ground and run over repeatedly with her own van. Blood matching her type was found on the underside of the vehicle.'
"(May 2, 2001, Amended Sentencing Order.)
"....
"Here, the facts support the trial court's finding that the murder was especially heinous, atrocious, or cruel as compared to other capital murders. See Ex parte Hutcherson, 727 So.2d 861 *941 (Ala.1998) (murder especially heinous, atrocious, or cruel when victim was beaten to death), cert. denied, 527 U.S. 1024, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999). The evidence demonstrated that Seaton pleaded for her life for some time before she was beaten with fists and a pistol and was ultimately run over with her own vehicle. Murph testified that she even took off her clothes and offered to have sex with Hodges and Murph if they would not kill her. The evidence further demonstrated that Seaton had been physically and psychologically tortured. `The torture element of the circumstance may involve both physical and psychological torture.' Wilson v. State, 777 So.2d 856, 881 (Ala.Crim.App.1999), aff'd, 777 So.2d 935 (Ala.2000), cert. denied, 531 U.S. 1097, 121 S.Ct. 826, 148 L.Ed.2d 709 (2001). There was sufficient evidence to show that Seaton's murder was `especially heinous, atrocious, or cruel' as compared to other capital murders.
"The trial court found no statutory mitigating evidence present. Hodges argues that the trial court erred in failing to find as statutory mitigating evidence that Hodges could not conform his conduct to the requirements of the law. § 13A-5-51(6). He contends that there was evidence that he had been drinking at the time of the robbery/murder. The trial court stated the following:
"`The capacity of [Hodges] to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not impaired. There was evidence that [Hodges] and [Murph] were drinking, but no evidence they were under the influence of alcohol or drugs at the time of the commission of this offense, nor otherwise physically or mentally impaired or affected.'
"(May 2, 2001, Amended Sentencing Order.)
"The trial court's finding is supported by the record. There was absolutely no evidence presented indicating that Hodges was so drunk he was unable to appreciate the criminality of his conduct. Evidence of alcohol consumption, alone, does not indicate that an individual was so intoxicated that he was unable to form an intent. See Windsor v. State, 683 So.2d 1027, 1037 (Ala.Crim.App. 1994), aff'd, 683 So.2d 1042 (Ala.1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997).
"The trial court stated the following about the nonstatutory mitigating evidence:
"`Testimony was given by [Hodges's] mother as to a difficult family history during [Hodges's] childhood. She testified that [Hodges's] father abused her. However, she left [Hodges's] father when [Hodges] was two years old. She remarried a man who was verbally abusive to the family but left him when [Hodges] was seven years old. At the time of this offense, [Hodges] was 27-years-old. In the opinion of this Court, this testimony is entitled to little, if any, weight.'
"(May 2, 2001, Amended Sentencing Order.)
"Hodges argues that the trial court erred in failing to find certain nonstatutory mitigating evidence. We have often stated that `"[a]lthough the trial court is required to consider all mitigating circumstances, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sentencer."` Boyd v. State, 715 So.2d 825, 840 (Ala.Crim.App. 1997), aff'd, 715 So.2d 852 (Ala.1998), quoting Williams v. State, 710 So.2d 1276, 1347 (Ala.Crim.App.1996), aff'd, *942 710 So.2d 1350 (Ala.1997), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998). Hodges argues that the trial court erred in not considering as mitigating that his codefendant received a sentence of life imprisonment without parole. We have stated that a trial court is not bound to find as a mitigating circumstance that a codefendant received a lesser sentence than death. See Johnson v. State, 820 So.2d 842 (Ala.Crim.App.2000), aff'd, 820 So.2d 883 (Ala.2001).
"The trial court weighed the aggravating circumstances and the mitigating circumstances and elected not to follow the jury's recommendation. The trial court explained its decision:
"`It is the opinion of this Court that, given the facts of this case, that the advisory verdict of the jury should not be followed.
"`This was an especially cruel and torturous murder. The victim, after being abducted at gunpoint by the two perpetrators, cooperated by giving access to the building and safe at the Golden Corral Restaurant. They got the money they sought without resistance from the victim.
"`It would have been humane for them to release the victim at that point. Instead, they continued to hold her against her will. She was driven around, naked, and beaten and choked as she pled for her life. It would be reasonable to assume that she was conscious and terrified as the torture continued over an extended period of time.
"`She was then dumped on the ground and run over repeatedly. It is unclear whether she was still alive at the time this was done but that conclusion could be drawn, thus magnifying the terror and anguish inflicted on the victim by [Hodges].
"`While this Court has given great deference to the verdict and sentence recommendations of this jury, still the depravity of [Hodges], the callousness of his acts toward the victim (as recounted above), and comparing his acts with similar cases, it is the opinion of this Court that a greater measurement of punishment is proper than life [imprisonment] without parole.'
"(May 2, 2001, Amended Sentencing Order.)"
Hodges II, 856 So.2d at 930-33.

I. The Judicial Override
In Ex parte Waldrop, [Ms. 1001194, November 22, 2002] ___ So.2d ___ (Ala.2002), we addressed the same arguments Hodges makes here concerning the constitutionality of the judicial-override provision in Alabama's capital sentencing scheme in light of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).[1] We upheld the judicial-override in Waldrop.
*943 In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. In Ring, the defendant was convicted of a murder committed during the course of a robbery. However, under Arizona's statutory scheme, unlike Alabama's, only the trial court heard the evidence submitted at the sentencing hearing. The trial court determined which aggravating circumstances and mitigating circumstances existed, weighed those circumstances, and sentenced Ring to death. The Supreme Court concluded that because "Arizona's enumerated aggravating factors operate as `the functional equivalent of an element of a greater offense,'" those factors must be found by a jury. 536 U.S. at 609, 122 S.Ct. at 2443 (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348). Because the trial judge and not the jury made the factual findings required to sentence Ring to death, the Supreme Court reversed the judgment of the Supreme Court of Arizona. Id.
In Waldrop, we first addressed Waldrop's argument that a defendant cannot be sentenced to death in Alabama unless a jury finds both that a defendant is guilty of a capital offense and that at least one statutory aggravating circumstance exists. We concluded:
"Because the jury convicted Waldrop of two counts of murder during a robbery in the first degree, a violation of Ala.Code 1975, § 13A-5-40(a)(2), the statutory aggravating circumstance of committing a capital offense while engaged in the commission of a robbery, Ala.Code 1975, § 13A-5-49(4), was `proven beyond a reasonable doubt.' Ala.Code 1975, § 13A-5-45(e); Ala.Code 1975, § 13A-5-50. Only one aggravating circumstance must exist in order to impose a sentence of death. Ala.Code 1975, § 13A-5-45(f). Thus, in Waldrop's case, the jury, and not the trial judge, determined the existence of the `aggravating circumstance necessary for imposition of the death penalty.' Ring, 536 U.S. at 609, 122 S.Ct. at 2443. Therefore, the findings reflected in the jury's verdict alone exposed Waldrop to a range of punishment that had as its maximum the death penalty. This is all Ring and Apprendi require."
___ So.2d at ___. Likewise, in Hodges's case, because the jury convicted him of murder made capital because it was committed during a first-degree robbery, the jury, not the trial court, determined the existence of at least one aggravating circumstance that exposed Hodges "to a range of punishment that had as its maximum the death penalty." ___ So.2d at ___.
We next addressed in Waldrop his argument that the process of deciding whether the aggravating circumstances outweigh the mitigating circumstances is a factual finding that must be made by the jury and not the trial court. We concluded:
"[T]he determination whether the aggravating circumstances outweigh the mitigating circumstances is not a finding of fact or an element of the offense. Consequently, Ring and Apprendi do not require that a jury weigh the aggravating circumstances and the mitigating circumstances." *944 ___ So.2d at ___. That conclusion applies to Hodges as well.
Finally, we addressed Waldrop's argument that the existence of the aggravating circumstance that a murder is "especially heinous, atrocious or cruel compared to other capital offenses," § 13A-5-49(8), Ala.Code 1975, is a factual finding that must be made by the jury, not the trial court. We concluded:
"... Ring and Apprendi do not require that the jury make every factual determination; instead, those cases require the jury to find beyond a reasonable doubt only those facts that result in `an increase in a defendant's authorized punishment ...' or `"expose[] [a defendant] to a greater punishment...."' Ring, 536 U.S. at 602, 122 S.Ct. at 2439, 2440 (quoting Apprendi, 530 U.S. at 494, 120 S.Ct. 2348). Alabama law requires the existence of only one aggravating circumstance in order for a defendant to be sentenced to death. Ala.Code 1975, § 13A-5-45(f). The jury in this case found the existence of that one aggravating circumstance: that the murders were committed while Waldrop was engaged in the commission of a robbery. At that point, Waldrop became `exposed' to, or eligible for, the death penalty. The trial court's subsequent determination that the murders were especially heinous, atrocious, or cruel is a factor that has application only in weighing the mitigating circumstances and the aggravating circumstances, a process that we held earlier is not an `element' of the offense."
___ So.2d at ___. Likewise, Hodges became eligible for the death penalty when the jury found that he committed the murder while he was engaged in a robbery in the first degree, and the trial court's subsequent finding that the murder was "especially heinous, atrocious or cruel" is implicated only in the process of weighing the aggravating and mitigating circumstances.
Furthermore, the United States Supreme Court in Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), released the same day as Ring, stated: "Basing a 2-year increase in the defendant's minimum sentence on a judicial finding of brandishing does not evade the requirements of the Fifth and Sixth Amendments." 536 U.S. at 568, 122 S.Ct. at 2420.
A dissenting opinion, joined by three other Justices, observed:
"According to the plurality, the historical practices underlying the Court's decision in Apprendi with respect to penalties that exceed the statutory maximum do not support extension of Apprendi's rule to facts that increase a defendant's mandatory minimum sentence. Such fine distinctions with regard to vital constitutional liberties cannot withstand close scrutiny."
536 U.S. at 574, 122 S.Ct. at 2423 (Thomas, J., dissenting). At a later point the dissenting opinion states:
"Thus, it is ultimately beside the point whether as a matter of statutory interpretation brandishing is a sentencing factor, because as a constitutional matter brandishing must be deemed an element of an aggravated offense. See Apprendi, supra, at 483, n. 10, 530 U.S. 466, 120 S.Ct. 2348 (`[F]acts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition "elements" of a separate legal offense')."
536 U.S. at 576, 122 S.Ct. at 2424. Until the dissenting opinion in Harris becomes the law of the land, we reject Hodges's argument that the trial court's finding that the offenses were "especially heinous, atrocious or cruel compared to other capital *945 offenses" is a finding of fact that must be determined by a jury.

II. Restricted Mitigating Evidence
Hodges argues that the trial court improperly restricted the presentation of mitigating evidence on his behalf provided by his mother during the penalty phase of his trial, and that the trial court improperly commented in the presence of the jury that certain of that evidence was irrelevant. Hodges's mother, Cora Cobb, was the only witness who testified at the penalty phase of his trial. She testified as to the abuse she endured from Hodges's father and from subsequent husbands, the poverty the family endured, Hodges's emotionally abusive treatment by a mentally ill stepfather, frequent moves by the family as a result of poverty and spousal abuse, and Hodges's search as a teenager for his father and his disappointment upon locating his father. At one point during her testimony, the following occurred:
"Q. Ms. Cobb, where did you and the children go after you left Folkston [where Hodges was born]?
"A. Well, at the time I had talked at length with the pastor of the church that I wentI went to.
"MR. ABBETT [the prosecutor]: Your Honor, could I interpose an objection on the grounds of relevancy, Your Honor? If we could get to the life of the defendant.
"THE COURT: Sustain the objection.
"MR. ABBETT: Her prior life doesn't have any relevance
"THE COURT: Sustain the objection.
"Q. Just tell me where you went.
"A. Went toI camemoved to Auburn. [The witness then answered several questions from Hodges's counsel as to the various places the family had lived.]
"Q. Where did you go after that?
"MR. ABBETT: Your Honor, again, I object
"THE COURT: Mr. Ray [defense counsel], we need to get something that
"MR. ABBETT:on the grounds of relevant
"THE COURT:is relevant to this phase of the trial. And I don't believe this is.
"MR. RAY [defense counsel]: Judge, Iif I may present some authority, that the instability of the family life is certainly relevant to mitigation. I have authority on that, I will be glad to submit it.
"THE COURT: Well, the fact that you have moved from one place to the other I don't believe has any relevancy to that?
"MR. RAY: Yes, sir, it does, and II mean, it's
"THE COURT: Mr. Ray, please don't argue with me.
"MR. RAY: I am not arguing with you, Judge. I am just giving you
"THE COURT: Come up.
"MR. RAY:my opinions.
"THE COURT: Come up here."
The trial court then held a bench discussion with the lawyers out of the jury's presence regarding the mitigating evidence being offered through the mother's testimony. The trial court expressed chagrin over testimony it characterized as "a narrative of this lady and her travels without any reference to what effect, if any, it has on this defendant," and stated to defense counsel that the court would "give [him] a lot of leeway, ... but I don't think we ought to be wasting a juror's time on things that don't seem to have much relevance at all." The following then occurred:

*946 "MR. RAY: [T]his is a serious situation andand I would refer the Court to the Supreme Court case of Eddings v. Oklahoma, [455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982),] also McGauth[a] v. California, [402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971),] which say that the family's instability, lack of a father, and that sort of thing is a mitigating circumstance, as well as the rules inin the Code of Alabama about the evidence that is relevant to a sentencing phase. Which says that anything pertaining to thethe defendant would be relevant. And I would like to refer you to those Code sections that talk about relevance ofin the sentencing phase.
"THE COURT: I know those Code sections, but you are asking this lady if she moved from one place and then she moved two blocks over. And this sort of thing. [The trial court is referring to Mrs. Cobb's testimony that the family lived at an Auburn address for approximately a year and then moved `to a bigger place which was on the next road over.']
"MR. RAY: Yes, sir.
"THE COURT: Thatthat doesn't seem to me to have any relevance at all.
"MR. RAY: Well, as I said
"THE COURT: Are you going to get to something else very shortly?
"MR. RAY: There is going to be some history of moving around, Judge, and the stepfathers that come in and the stepfathers that are alcoholics, and the stepfathers
"THE COURT: Okay. Well, why don't we get to that."
Thereafter, defense counsel had the opportunity to go into evidence concerning the instability of Hodges's family during his childhood. Although defense counsel did not specifically question the witness further about the frequency of the family's moves, he did ask general questions, without objection from the State, about various stepfathers who came and went from the home, from which the jury could have inferred that moves took place. Obviously, the bench discussion persuaded the trial court to reconsider its view as to the relevance of testimony about the family's moves. Nevertheless, defense counsel did not object to the trial court's previous remarks in the presence of the jury concerning the lack of relevance of evidence indicating that the family had moved from place to place and he did not request a curative instruction on that issue.
In discussing the testimony of Hodges's mother, the Court of Criminal Appeals stated:
"[Cora Cobb] was repeatedly interrupted during her testimony by the prosecution and the trial court. The trial court attempted to limit her discussion about the number of moves the family had made when Hodges was growing up. We agree with defense counsel's characterization of this evidenceit was admissible to show the instability of Hodges's home environment. However, this evidence was introduced during her testimony; thus, there is no reversible error."
Hodges I, 856 So.2d at 892 n. 4. The Court of Criminal Appeals pointed out that a difficult family history is a mitigating circumstance, but that the weight to be accorded that circumstance depends upon the facts of the case and the defendant's age. Id. We note that Hodges was 27 years old at the time this murder was committed.
Hodges argues that even though he was eventually able to present most, if not all, of the mitigating evidence he wanted the jury to hear, the trial court erred in stating in the presence of the jury, while ruling *947 on an objection during the testimony, that the evidence regarding the family's many moves was not relevant. That error, Hodges argues, might have affected the number of jurors who voted for life imprisonment without the possibility of parole instead of death. Had more jurors voted for life imprisonment, Hodges reasons, the trial court might have been more reluctant to override the jury's verdict.
Hodges is correct that the number of jurors voting for life imprisonment is a factor this Court now requires a trial court to consider in weighing the aggravating circumstances against the mitigating circumstances in a case in which a sentence of death is a possibility. In Ex parte Carroll, 852 So.2d 833 (Ala.2002), this Court held:
"We take this opportunity to further explain the effect of a jury's recommendation of life imprisonment without the possibility of parole. Such a recommendation is to be treated as a mitigating circumstance. The weight to be given that mitigating circumstance should depend upon the number of jurors recommending a sentence of life imprisonment without parole, and also upon the strength of the factual basis for such a recommendation in the form of information known to the jury, such as conflicting evidence concerning the identity of the `triggerman' or a recommendation of leniency by the victim's family; the jury's recommendation may be overridden based upon information known only to the trial court and not to the jury, when such information can properly be used to undermine a mitigating circumstance."
852 So.2d at 836 (footnote omitted).
After reviewing the record, we conclude that Hodges was able to present to the jury the evidence regarding his difficult, unstable, and impoverished childhood. The trial court initially sustained the prosecutor's objections as to the family's frequent moves and commented in the presence of the jury that such evidence was not relevant. The evidence was, however, relevant. See, e.g., Hall v. State, 820 So.2d 113 (Ala.Crim.App.1999), aff'd, 820 So.2d 152 (Ala.2001), cert. denied, 535 U.S. 1080, 122 S.Ct. 1966, 152 L.Ed.2d 1025 (2002); Powell v. State, 796 So.2d 404 (Ala.Crim. App.1999), aff'd, 796 So.2d 434 (Ala.), cert. denied, 534 U.S. 904, 122 S.Ct. 236, 151 L.Ed.2d 170 (2001); Williams v. State, 783 So.2d 108 (Ala.Crim.App.2000); Smith v. State, 756 So.2d 892, 954 (Ala.Crim.App. 1997), aff'd, 756 So.2d 957 (Ala.2000). Nevertheless, as the Court of Criminal Appeals correctly noted, the evidence of the Hodges family's frequent moves was ultimately admitted. The question before us, then, is whether the trial court's erroneous comments about the relevancy of the evidence require us to reverse Hodges's sentence and remand the case for a new sentencing hearing.
Because Hodges's defense counsel did not object to the trial court's comments or request a curative jury instruction, we review this issue pursuant to the plain-error rule. Because Hodges was sentenced to death, the failure to object at trial does not bar appellate review of this issue, but it does weigh against any claim of prejudice he makes on appeal. This Court recently addressed the application of the plain-error rule in capital cases in Ex parte Bryant, [Ms. 1990901, June 21, 2002] ___ So.2d ___ (Ala.2002), where we stated:
"`"`Plain error' arises only if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings."' Ex parte Womack, 435 So.2d 766, 769 (Ala.1983) (quoting United States v. Chaney, 662 F.2d 1148, 1152 *948 (5th Cir.1981)). See also Ex parte Woodall, 730 So.2d 652 (Ala.1998). `"In other words, the plain-error exception to the contemporaneous objection rule is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'"' Ex parte Land, 678 So.2d 224, 232 (Ala. 1996) (quoting United States v. Young, 470 U.S. 1, 15 (1985)) (quoting in turn United States v. Frady, 456 U.S. 152, 163 n. 14 (1982)). `To rise to the level of plain error, the claimed error must not only seriously affect a defendant's "substantial rights," but it must also have an unfair prejudicial impact on the jury's deliberations.' Hyde v. State, 778 So.2d 199, 209 (Ala.Crim.App.1998), aff'd, 778 So.2d 237 (Ala.2000), cert. denied, 532 U.S. 907 (2001). This Court may take appropriate action when the error `has or probably has adversely affected the substantial rights of the appellant.' Rule 45A, Ala. R.App. P. `[A] failure to object at trial, while not precluding our review, will weigh against any claim of prejudice.' Ex parte Woodall, 730 So.2d at 657 (citing Kuenzel v. State, 577 So.2d 474 (Ala.Crim.App.1990), aff'd, 577 So.2d 531 (Ala.1991))."
___ So.2d at ___ (emphasis added).
Hodges contends that without the trial court's comment that evidence of the family's frequent moves was irrelevant, the jury might have returned a recommendation in favor of life imprisonment without the possibility of parole by a vote of greater than 8-4. As previously stated, the evidence regarding the frequent moves Hodges's family made when he was a child was relevant, and the trial court should not have commented in the presence of the jury on the relevancy of the evidence of the frequency of the moves. However, the assumption that had those comments not been made the jury might have returned a vote more favorable to Hodges and, thereafter, that the trial court might have declined to override the jury's recommendation, is too tenuous a foundation upon which to base plain error. After reviewing all of the evidence in this case, especially the manner in which the 27-year-old Hodges murdered the victim, we conclude that the trial court's comments concerning the lack of relevance of the evidence of the frequency of moves made in the midst of the testimony from Hodges's mother to which there was no objection, followed by a bench conference that led to permission to pursue this avenue of inquiry, do not rise to the level of "plain error." We confine the operation of the plain-error rule to those cases where the error "has or probably has adversely affected the substantial rights of the appellant." Rule 39(a)(2)(D), Ala. R.App. P. (emphasis added). We use it "sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." United States v. Frady, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Speculation as to what would have happened absent the unobjected-to remarks concerning the relevancy of the evidence of the frequency of the family's moves after which general testimony about the instability of Hodges's family life was permitted does not rise to the level of error that had or probably had adversely affected Hodges's substantial rights so as to permit the conclusion that a miscarriage of justice occurred.

III. Conclusion
Based on our independent weighing of the aggravating circumstances and the mitigating circumstances in this case, and treating the jury's recommendation as a mitigating circumstance in this case, we *949 conclude that the trial court's override of the jury's recommended sentence of life imprisonment without the possibility of parole and that court's subsequent sentence of death were proper under the circumstances presented here. See § 13A-5-53(a) and (b), Ala.Code 1975. We therefore affirm the judgment of the Court of Criminal Appeals as to Hodges's sentence.[2]
AFFIRMED.
MOORE, C.J., and HOUSTON, SEE, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs specially.
JOHNSTONE, Justice (concurring specially).
This Court granted the writ of certiorari to review only the two issues addressed by the main opinion. Because the main opinion has correctly addressed both of those issues, I concur fully.
I do not want my concurrence to be misconstrued, however, as any expression of approval of what I regard as some dicta in the opinion by the Court of Criminal Appeals in this case, Hodges v. State, 856 So.2d 875, 894 (Ala.Crim.App.2001) (opinion on return to remand)a number of statements to the effect that any error by the trial court in denying the defendant's challenges of venirepersons for cause was later rendered harmless by the defendant's exercising peremptory challenges to keep these same venirepersons off the jury. I adhere to the views I expressed, and I insist on the authorities I cited, in my special writing in Bethea v. Springhill Memorial Hospital, 833 So.2d 1, 9-11 (Ala. 2002), for the proposition that the erroneous denial of a valid challenge for cause is reversible error. The reason that the denials of defendant's challenges for cause in the case now before us are not reversible is that those denials were not erroneous.
NOTES
[1] The United States Supreme Court issued its decision in Ring on June 24, 2002. As we explained in Waldrop, even though Hodges was convicted before the Supreme Court decided Ring, it applies to Hodges's case.

"`[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final.' Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). `By "final," we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.' Griffith, 479 U.S. at 321 n. 6, 107 S.Ct. 708."
___ So.2d at ___ n. 1. Because Hodges's case was pending on certiorari review when the Supreme Court decided Ring, the new rule announced in that case is applicable to Hodges.
[2] We have addressed only those issues relating to Hodges's sentence, because his petition for certiorari review does not raise questions relating to his conviction.