On Remand from the Alabama Supreme Court

WISE, Judge.[1]
Jerry Devane Bryant was convicted of murder made capital because it occurred during a kidnapping in the first degree. See § 13A-5-40(a)(l), Ala.Code 1975. By a vote of 11-1, the jury recommended that Bryant be sentenced to death. In accordance with the jury’s recommendation, the circuit court sentenced Bryant to death.
On November 19, 1999, this Court affirmed Bryant’s conviction and sentence. Bryant v. State, 951 So.2d 702- (Ala.Crim.App.1999). Bryant petitioned the Alabama Supreme Court for certiorari review on February 11, 2000. The Supreme Court granted the petition, pursuant to former Rule 39(c), Ala.R.App.P.[2] On June 21, 2002, the Supreme Court affirmed Bryant’s conviction, but reversed the sentence of death and remanded the case to this Court, holding that Bryant was entitled to a new sentencing proceeding because the circuit court’s penalty-phase jury instructions implied that the jury could not recommend a penalty of life in prison without the possibility of parole instead of death unless the mitigating circumstances outweighed the aggravating circumstances. Ex parte Bryant, 951 So.2d 724 (Ala.2002). The Supreme Court overruled the State’s application for rehearing on January 31, 2003.
In accordance with the Supreme Court’s decision in Ex parte Bryant, Bryant’s sentence of death is reversed and this cause is remanded for the circuit court to conduct a new sentencing hearing before a jury. The circuit court should take the necessary action to ensure that the circuit clerk makes due return to this Court within 120 days from the date of this opinion, or as soon as practicable.
*737 REVERSED AS TO SENTENCE AND REMANDED WITH DIRECTIONS.
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur.

On Return to Remand

WISE, Judge.
The appellant, Jerry Devane Bryant, was convicted of murder made capital because it occurred during a kidnapping in the first degree. See § 13A-5-40(a)(l), Ala.Code 1975. In accordance with the jury’s recommendation, the circuit court sentenced Bryant to death.
On November 19, 1999, this Court affirmed Bryant’s conviction and sentence. Bryant v. State, 951 So.2d 702 (Ala.Crim.App.1999). On June 21, 2002, the Supreme Court affirmed Bryant’s conviction, but reversed the sentence of death and remanded the case to this Court, holding that Bryant was entitled to a new sentencing proceeding because the circuit court’s penalty-phase jury instructions implied that the jury could not recommend a penalty of life in prison without the possibility of parole instead of death unless the mitigating circumstances outweighed the aggravating circumstances. Ex parte Bryant, 951 So.2d 724 (Ala.2002).
On March 21, 2003, this Court, in accordance with the Supreme Court’s directive, reversed Bryant’s death sentence and remanded this case for the Houston Circuit Court to conduct a new sentencing hearing. The circuit court has complied with our directions, and on October 8, 2004, this case was resubmitted for our review.
Because the facts surrounding this case have already been set out in some detail, a brief rendition of the facts will suffice.
The evidence presented at trial established that on the night of January 27, 1997, Bryant kidnapped and murdered 27-year-old Donald Hollis. Bryant kidnapped Hollis in Dothan and later that night shot him in the head three times. Bryant then put Hollis’s body in the trunk of Hollis’s automobile, drove to Florida, and disposed of the body. Bryant then sold Hollis’s cellular telephone for crack cocaine; he also attempted to sell Hollis’s car for crack cocaine, but was unsuccessful. The jury found Bryant guilty of murder made capital because it occurred during a kidnapping in the first degree.
Following a second sentencing hearing conducted on remand, the jury recommended by a vote of 11-1 that he be sentenced to death. The circuit court adopted the jury’s recommendation and sentenced Bryant to death.
We now address the issues raised as a result of the new sentencing hearing and the other penalty-phase issues. Any additional facts pertinent to the resolution of these issues will be set out as necessary.
I.
Bryant argues that the circuit court erred when it granted the State’s challenges for cause regarding prospective jurors E.F. and M.F.[1]
When reviewing a challenge for cause, we look to the following general principles of law:
“To justify a challenge for cause, there must be a proper statutory ground or ‘ “some matter which imports absolute bias or favor, and leaves nothing to the discretion of the trial court.” ’ Clark v. State, 621 So.2d 309, 321 (Ala.Cr.App.1992) (quoting Nettles v. State, 435 So.2d 146, 149 (Ala.Cr.App.1983)). This Court has held that ‘once a juror indicates *738 initially that he or she is biased or prejudiced or has deep-seated impressions’ about a case, the juror should be removed for cause. Knop v. McCain, 561 So.2d 229, 234 (Ala.1989). The test to be applied in determining whether a juror should be removed for cause is whether the juror can eliminate the influence of his previous feelings and render a verdict according to the evidence and the law. Ex parte Taylor, 666 So.2d 73, 82 (Ala.1995). A juror ‘need not be excused merely because [the juror] knows something of the case to be tried or because [the juror] has formed some opinions regarding it.’ Kinder v. State, 515 So.2d 55, 61 (Ala.Cr.App.1986). Even in cases where a potential juror has expressed some preconceived opinion as to the guilt of the accused, the juror is sufficiently impartial if he or she can set aside that opinion and render a verdict based upon the evidence in the case. Kinder, at 60-61. In order to justify disqualification, a juror ‘ “must have more than a bias, or fixed opinion, as to the guilt or innocence of the accused” ’; ‘ “[s]uch opinion must be so fixed ... that it would bias the verdict a juror would be required to render.” ’ Oryang v. State, 642 So.2d 979, 987 (Ala.Cr.App.1993) (quoting Siebert v. State, 562 So.2d 586, 595 (Ala.Cr.App.1989)).”
Ex parte Davis, 718 So.2d 1166, 1171-72 (Ala.1998), cert. denied, 525 U.S. 1179, 119 S.Ct. 1117, 143 L.Ed.2d 112 (1999). See also Whitehead v. State, 777 So.2d 781, 808 (Ala.Crim.App.1999), aff'd, 777 So.2d 854 (Ala.2000), cert. denied, 532 U.S. 907, 121 S.Ct. 1233, 149 L.Ed.2d 142 (2001).
This issue was also discussed at length in Dallas v. State, 711 So.2d 1101, 1107 (Ala.Crim.App.1997), aff'd, 711 So.2d 1114 (Ala.), cert. denied, 525 U.S. 860, 119 S.Ct. 145, 142 L.Ed.2d 118 (1998) (quoting Taylor v. State, 666 So.2d 36, 47 (Ala.Crim.App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996)). In Dallas, we stated:
“1 “The proper standard for determining whether a prospective juror may be excluded for cause because of his or her views on capital punishment is ‘whether the juror’s views would “prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.” ’ Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); Gray v. Mississippi, 481 U.S. 648 [at 657-58], 107 S.Ct. 2045, 2051, 95 L.Ed.2d 622 (1987). ‘The crucial inquiry is whether the venireman could follow the court’s instructions and obey his oath, notwithstanding his views on capital punishment.’ Dutton v. Brown, 812 F.2d 593, 595 (10th Cir.), cert. denied, Dutton v. Maynard, 484 U.S. 836, 108 S.Ct. 116, 98 L.Ed.2d 74 (1987). A juror’s bias need not be proved with ‘unmistakable clarity’ because ‘juror bias cannot be reduced to question and answer sessions which obtain results in the manner of a catechism.’ Id.
“ ‘ “A trial judge’s finding on whether or not a particular juror is biased ‘is based upon determination of demeanor and credibility that are peculiarly within a trial judge’s province.’ Witt, 469 U.S. at 428, 105 S.Ct. at 854. That finding must be accorded proper deference on appeal. Id. ‘A trial court’s rulings on challenges for cause based on bias [are] entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion.’ Nobis v. State, 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, Ex parte Nobis, 401 So.2d 204 (Ala.1981).”
“ ‘Martin v. State, 548 So.2d 488, 490-91 (Ala.Cr.App.1988), affirmed, 548 So.2d *739 496 (Ala.1989), cert. denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989). “[A] blanket declaration of support of or opposition to the death penalty is not necessary for a trial judge[ ] to disqualify a juror.” Ex parte Whisenhant, 555 So.2d 235, 241 (Ala.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990).’ ”
See also McNabb v. State, 887 So.2d 929, 944-45 (Ala.Crim.App.2001), aff'd, 887 So.2d 998 (Ala.), cert. denied, 543 U.S. 1005, 125 S.Ct. 606, 160 L.Ed.2d 466 (2004).
With these principles in mind, we will address Bryant’s claims as to these potential jurors.
Bryant contends that the circuit court should not have granted the State’s challenges for cause as to potential jurors E.F. and M.F., who indicated their opposition to the death penalty. Specifically, he argues that they were adequately rehabilitated during additional voir dire that clarified their opinions regarding the death penalty.
In Pressley v. State, 770 So.2d 115, 127 (Ala.Crim.App.1999), aff'd, 770 So.2d 143 (Ala.), cert. denied, 531 U.S. 931, 121 S.Ct. 313, 148 L.Ed.2d 251 (2000), this Court noted the following:
“In Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the United States Supreme Court held that the proper standard for determining whether a veniremember should be excluded for cause because of opposition to the death penalty is whether the venire-member’s views would ‘ “prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.” ’ The Supreme Court has expressly stated that juror bias does not have to be proven with ‘unmistakable clarity.’ Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).”
See also Watkins v. State, 509 So.2d 1071, 1073 (Ala.Crim.App.1986), aff'd, 509 So.2d 1074 (Ala.), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).
We have reviewed the voir dire conducted by the circuit court, paying particular attention to those jurors against whom challenges for cause were lodged, including E.F. and M.F. After reviewing the voir dire examination, we conclude that the circuit court did not err in granting the challenges for cause as to E.F. and M.F. Both individuals indicated their opposition to the death penalty. Both expressed reservations about their ability to recommend the death penalty, even if the aggravating circumstances outweighed the mitigating circumstances. Upon further voir dire, both indicated that the aggravating circumstances would have to greatly outweigh the mitigating circumstances before they would be able even to consider recommending that Bryant be sentenced to death. In responding to the court’s inquiry, M.F. noted that there would have to be “a great amount of aggravating circumstances for me to recommend the death penalty ... [and] if there was just even a small bit of mitigating circumstances, that would make me go towards life [imprisonment] without parole.” (R. 154.) M.F. went on to note that if there was any mitigating evidence at all, it would be enough for him to recommend life imprisonment without parole (R. 155-56), before telling the court that “I could not do it” (R. 157), meaning that he could not recommend the death penalty.
E.F. was equally reluctant to even consider recommending that Bryant be sentenced to death. E.F. indicated that if the aggravating circumstances just barely outweighed the mitigating circumstances, he could not recommend the death penalty. (R. 183, 204.) E.F. further indicated that the aggravating circumstances would have *740 to substantially outweigh the mitigating circumstances before he could even consider recommending a sentence of death. (R. 183.)
Section 13A-5-46(e)(3), Ala.Code 1975, provides: “If the jury determines that one or more aggravating circumstances as defined in Section 13A-5^á9 exist and that they outweigh the mitigating circumstances, if any, it shall return an advisory verdict recommending to the trial court that the penalty be death.” In interpreting this statute, we have stated: “For the death penalty to be imposed in Alabama, it does not have to be proven that beyond a ‘reasonable doubt’ the aggravating circumstances outweigh the mitigating circumstances. The aggravating circumstances must simply outweigh the mitigating circumstances.” Williams v. State, 601 So.2d 1062, 1082-83 (Ala.Crim.App.1991), aff'd, 662 So.2d 929 (Ala.), cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992). However, as seen above, each of these jurors indicated that if the aggravating circumstances merely outweighed the mitigating circumstances, they would be unable to follow the law and recommend that Bryant be sentenced to death. Instead, both indicated that they would recommend the death penalty only if the evidence met a higher standard of proof than that required under § 13A-5-46(e)(3). Because both E.F. and M.F. indicated that they would not be able to follow the court’s instructions regarding the law applicable to this case, the circuit court did not abuse its discretion in granting the State’s challenges for cause as to these jurors.
II.
Bryant also argues that the State unconstitutionally used its peremptory challenges to remove African-Americans from the jury venire. On appeal, Bryant specifically contends that the State’s use of its peremptory challenges to remove 4 of 7 African-Americans from the venire established a prima facie showing of race-discrimination in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
A trial court’s ruling on a Bat-son objection is entitled to great deference; this Court will not reverse the trial court’s ruling unless it is clearly erroneous. See Ex parte Branch, 526 So.2d 609, 625 (Ala.1987); Cooper v. State, 611 So.2d 460, 463 (Ala.Crim.App.1992).
“A defendant making a Batson challenge bears the burden of proving a prima facie case of purposeful or intentional discrimination and, in the absence of such proof, the prosecution is not required to state its reasons for its peremptory challenges. Ex parte Branch, 526 So.2d 609 (Ala.1987). Only when the defendant establishes facts and circumstances that raise an inference of discrimination must the State give its reasons for its peremptory strikes. Stokes v. State, 648 So.2d 1179, 1180 (Ala.Crim.App.1994).”
Ex parte Pressley, 770 So.2d 143, 145 (Ala.), cert. denied, 531 U.S. 931, 121 S.Ct. 313, 148 L.Ed.2d 251 (2000). In Pressley, the Alabama Supreme Court further noted that the mere fact that the State used a high percentage of its peremptory challenges to remove four of six African-Americans from the venire and used some of its peremptory strikes to remove females from the venire was insufficient, by itself, to establish a prima facie showing of racial or gender discrimination in the State’s use of its peremptory strikes, so as to require the State to offer explanations for the strikes. 770 So.2d at 146-47; see also Ex parte Trawick, 698 So.2d 162, 167-68 (Ala.), cert. denied 522 U.S. 1000, 118 S.Ct. 568, 139 L.Ed.2d 408 (1997). In Ex parte Branch, 526 So.2d 609, the Alabama Supreme Court discussed other factors to be used in establishing a prima facie case *741 of racial discrimination. Those factors are as follows: (1) evidence that the jurors in question shared only the characteristic of race and were in all other respects as heterogenous as the community as a whole; (2) a pattern of strikes against African-American jurors on the particular venire; (3) the past conduct of the prosecutor in using peremptory challenges to strike all African-Americans from the jury venire; (4) the type and manner of the State’s questions and statements during voir dire; (5) the type and manner of questions directed to the challenged juror, including a lack of questions; (6) disparate treatment of members of the jury venire who had the same characteristics or who answered a question in the same manner or in a similar manner; and (7) separate examination of members of the venire. Additionally, the Court noted that circumstantial evidence of intent could be proven by disparate impact where all or most of the challenges were used to strike African-Americans from the jury or where the State used peremptory challenges to dismiss all or most African-American jurors. 526 So.2d at 622-23.
Our review of the record reveals a thorough voir dire of the entire venire by both the prosecution and the defense. At the conclusion of voir dire, several jurors were removed for cause, leaving 46 potential jurors from which to select a jury. The prosecution and the defense were each afforded 17 peremptory challenges, with each side’s final challenge serving as an alternate juror. The State used 4 of its 17 challenges to remove African-Americans from the jury venire. After the jury was struck, defense counsel made the following objection:
“There were, by my count, seven African-Americans on the strike panel, of whom the State has exercised peremptory challenges with respect to four of them.... I ask the Court to take judicial notice that my client, Jerry Devane Bryant, is an African-American, and we feel that ... those jurors were struck for reasons other than race-neutral reasons and ask for relief under Batson.”
(R. 206.)
Bryant offered no evidence, nor did he allege, that the African-American jurors struck by the State shared only the characteristics of race, that anything in the type or manner of the State’s statements or questions during voir dire examination indicated an intent to discriminate against African-American jurors, that there was a lack of meaningful voir dire directed at African-American jurors, that African-American jurors and Caucasian jurors were treated differently, or that the State had a history of using peremptory challenges in a manner that discriminated against African-American jurors. Rather, Bryant offers only statistics regarding the number of African-Americans removed from the venire and the percentage of African-Americans removed from the veni-re. While statistical evidence can play a role in establishing a prima facie case, such evidence alone cannot support a pri-ma facie case of racial discrimination. Gavin v. State, 891 So.2d 907, 950 (Ala.Crim.App.2003); Woods v. State, 845 So.2d 843, 845 (Ala.Crim.App.2002); Armstrong v. State, 710 So.2d 531, 534 (Ala.Crim.App.1997). Given these circumstances, the circuit court correctly determined that the defense had failed to establish a prima facie case of racial discrimination.
III.
Bryant next argues that the circuit court erred when it admitted the prior trial testimony of Ricky Vickers as an unavailable witness, rather than requiring the State to produce the witness in person.
Rule 804(a)(5), Ala.R.Evid., provides that a declarant is unavailable when he or she:
*742 “(5) is absent from the hearing and the proponent of the statement has been unable to procure the declarant’s attendance ... by process or other reasonable means.”
The Alabama Supreme Court set out in Ex parte Scroggins, 727 So.2d 181 (Ala.1998), the requirements a prosecutor must meet in order to overcome a defendant’s Sixth Amendment right to confront witnesses against him and to be permitted to use the former testimony of a witness the State says is unavailable:
“When the prosecution seeks to introduce, against a criminal defendant, the former testimony of a now unavailable witness, its burden in seeking the witness’s presence is enhanced by the defendant’s Sixth Amendment right to confront witnesses. Ex parte Wright, 625 So.2d 1135, 1136 n. 2 (Ala.1993). Thus, when at trial the State wishes to use a person’s statement against a criminal defendant, in order for that statement to be admissible the State must either produce as a witness the person whose statement it wishes to use or else demonstrate that that person is ‘unavailable’ for the trial. Inmon v. State, 585 So.2d 261, 265 (Ala.Cr.App.1991).
“... In order for the admission of a statement of a witness who is not present at trial to satisfy the right to confrontation of witnesses, the concerns of necessity and reliability must be satisfied. ‘The necessity concern customarily requires that the prosecution either produce or account for the unavailability of the declarant.’ [C. Gamble, McElroy’s Alabama Evidence, § 242.01(7), p. 1132 (5th ed.1996)]. See Thompson v. State, 106 Ala. 67, 74, 17 So. 512, 514 (1895). Ohio v. Roberts [448 U.S. 56 (1980)] ‘mandates that the prosecution have made a good faith effort to obtain the presence of the declarant at trial.’ C. Gamble, supra, § 242.01(7), p. 1132.
“... Johnson v. State [623 So.2d 444, (Ala.Cr.App.1993)] sets a high standard for proving that the State exercised due diligence in its attempt to procure the presence of a witness:
“ ‘A party seeking to introduce a witness’s testimony from a prior proceeding at a subsequent proceeding, must establish the unavailability of the witness and the reasons therefor. Lamar v. State, 578 So.2d [1382] (Ala. Cr.App.1991), cert. denied, Ex parte Lamar, 596 So.2d 659 (Ala.1991). This predicate is fulfilled when the party offering the evidence establishes that it has exercised due diligence in obtaining the witness, but without success. See Matkins v. State, 521 So.2d 1040, 1041-42 (Ala.Cr.App.1987).’
[[Image here]]
“Johnson’s standard of due diligence is based upon Alabama law holding that a declarant is not rendered ‘unavailable’ by absence alone. The party seeking to introduce the declarant’s statement has to show that it is unable to procure the declarant’s attendance either by legal process or by other reasonable means:
“ ‘If a witness who has given testimony in the course of a judicial proceeding between the parties litigant, before a competent tribunal, subsequently dies; or becomes insane; or after diligent search is not to be found within the jurisdiction of the court, or if that which is equivalent be shown, that he has left the state permanently, or for such an indefinite time that his return is contingent and uncertain, it is admissible to prove the substance of the testimony he gave formerly. The rule is, however, exceptional, and it is essential to the admissibility of the evidence that some one of the contingencies, which are deemed to create the necessity, be satisfactorily shown. *743 Thompson v. State 106 Ala. 67, 74, 17 So. 512 [(1894)].’
“Williams v. Calloway, 281 Ala. 249, 251-52, 201 So.2d 506, 508 (Ala.1967).
“While the question of the sufficiency of the proof offered to establish the predicate of a witness’s unavailability is addressed to the sound discretion of the trial judge, the issue is of constitutional significance in a criminal case and especially so in a capital one.”
727 So.2d at 133-34. See also Flowers v. State, 799 So.2d 966, 974-75 (Ala.Crim. App.1999).
The State offered the following facts in support of its claim that it had exercised due diligence in attempting to secure the attendance of Ricky Vickers to testify at Bryant’s new sentencing hearing: Upon contacting the Department of Corrections (“DOC”) to secure Vickers’s attendance, the prosecution was informed that Vickers had completed his sentence and that he was no longer in the custody of DOC. The prosecution also contacted the Board of Pardons and Paroles to see if it had an address for Vickers, but was told that Vickers had completed his sentence and was no longer required to report to it. An investigator was sent out to question Vick-ers’s family members about his location. When questioned about Vickers’s whereabouts, various members of Vickers’s family advised the investigator that they did not know where he was. Some speculated that Vickers might be at his girlfriend’s house, but were either unwilling or unable to supply the State with a name or address for the girlfriend. When Vickers’s grandmother told investigators that he might “come by,” the State issued a subpoena for Vickers “in care of his grandmother’s house,” and had a Houston County sheriffs deputy spend three days attempting to locate and serve Vickers with the subpoena.
Given these circumstances, we conclude that the State proved that it used due diligence in an attempt to secure the attendance of Ricky Vickers. The State did “more than simply issue a subpoena and stop when it [was] returned ‘not found.’ ” Flowers v. State, 799 So.2d at 980 (opinion on return to remand) (quoting Manuel v. State, 803 P.2d 714, 716 (Okla.Crim.App.1990)). We know of no prescribed period of time that the State is required to search for a witness in order to have exercised “due diligence.” Certainly, some individuals will be easier to find than others. As a convicted felon and acquaintance of Bryant’s, Vickers obviously had no desire to be found by the State’s investigator or by a sheriffs deputy. If located, he would be required to testify against Bryant. “ ‘ “Rule 804(a)(5) does not require a proponent to butt his head against a wall just to see how much it hurts.” ’ ” Flowers v. State, 799 So.2d at 980 (opinion on return to remand) (quoting Urbano v. State, 808 S.W.2d 519, 522 (Tex.App.1991), quoting in turn, United States v. Kehm, 799 F.2d 354, 360 (7th Cir.1986)). The State having exhausted all leads and expended considerable resources in its attempt to locate Vick-ers, we cannot say that the trial court abused its discretion when it determined that Vickers was an “unavailable witness” and permitted the State to read Vickers’s previous testimony into the record at Bryant’s new sentencing hearing.
Moreover, contrary to Bryant’s contention, the United States Supreme Court’s decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), would not prevent the admission of Vickers’s previous testimony. In Crawford v. Washington, the United States Supreme Court held that the admission of a wife’s out-of-court statements to police officers, regarding an incident in which the defendant, her husband, allegedly stabbed the victim, violated the Confrontation *744 Clause. The Supreme Court stated that an out-of-court testimonial statement by a witness is barred under the Confrontation Clause, unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, 541 U.S. at 51-52, 124 S.Ct. 1354, regardless of whether the statement is deemed reliable by the trial court, abrogating its previous holding in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Here, the previous testimony sought to be admitted was Vickers’s testimony from Bryant’s trial, where Bryant had an opportunity to fully and fairly cross-examine Vickers. Accordingly, the decision in Crawford v. Washington serves as no impediment for the admission of Vickers’s previous testimony. Bryant’s rights under the Confrontation Clause were not violated when the circuit court allowed the State to introduce Vickers’s previous trial testimony.
IV.
Bryant also argues that the circuit court erred when it denied his requested jury charge regarding “residual doubt,” and, further, that it compounded this error by subsequently answering a question from the jury regarding “residual doubt.”
Relying on the United States Supreme Court decision in Franklin v. Lynaugh, 487 U.S. 164, 172-76, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), this Court has held on numerous occasions that “capital defendants have no right to demand jury consideration of ‘residual doubts’ in the sentencing phase.” See, e.g., Melson v. State, 775 So.2d 857, 898 (Ala.Crim.App.1999), aff'd, 775 So.2d 904 (Ala.2000); Rieber v. State, 663 So.2d 985, 995 (Ala.Crim.App.1994); Carroll v. State, 599 So.2d 1253, 1271 (Ala. Crim.App.1992), aff'd, 627 So.2d 874 (Ala. 1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994). We explained in Melson:
“In Myers v. State, 699 So.2d 1281 (Ala.Cr.App.1996), aff'd, 699 So.2d 1285 (Ala.1997), cert. denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d 648 (1998), this court stated the following concerning jury instructions on ‘residual doubt’:
“ ‘ “ ‘Our eases do not support the proposition that a defendant who has been found to be guilty of a capital crime beyond a reasonable doubt has a constitutional right to reconsideration by the sentencing body of lingering doubts about his guilt. We have recognized that some states have adopted capital sentencing procedures that permit defendants in some cases to enjoy the benefit of doubts that linger from the guilt phase of the trial, see Lockhart v. McCree, 476 U.S. 162, 181, 106 S.Ct. 1758, 1768, 90 L.Ed.2d 137 (1986), but we have never indicated that the Eighth Amendment requires states to adopt such procedures. To the contrary, as the plurality points out, we have approved capital sentencing procedures that preclude consideration by the sentencing body of “residual doubts” about guilt. See Ante, [487 U.S. at 173 n. 6, 108 S.Ct.] at 2327, n. 6.
“ ‘ “ ‘Our decisions mandating jury consideration of mitigating circumstances provide no support for petitioner’s claim because “residual doubt” about guilt is not a mitigating circumstance. We have defined mitigating circumstances as facts about the defendant’s character or background, or the circumstances of the particular offense, that may call for a penalty less than death, [citations omitted]. “Residual doubt” is not a factor about the defendant or the circumstances of the crime. It is instead a lingering uncertainty about facts, a state of mind that exists somewhere *745 between “beyond a reasonable doubt” and “absolute certainty.” ’ ” ’
“699 So.2d at 1283-84, quoting Harris v. State, 682 So.2d 503, 535 (Ala.Crim.App. 1992), aff'd, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (D.Ala.1995), quoting in turn Franklin v. Lynaugh, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988).”
775 So.2d at 898-99. Accordingly, the circuit court correctly denied Bryant’s requested jury charge on “residual doubt.” Moreover, the court’s instruction that “[rjesidual doubts as to the defendant’s guilt of being guilty of capital murder in this case are not proper sentencing considerations under Alabama law” (R. 764) was a correct — if somewhat inartfully worded — statement of Alabama law. Given these circumstances, Bryant’s claims of error are without merit.
V.
Bryant argues that the circuit court erred by submitting for the jury’s consideration the aggravating circumstance that Bryant’s murder of Hollis was committed for pecuniary gain. Because Bryant did not object to the court’s submission of this aggravating circumstance to the jury, we will review this claim under the plain-error standard, that is, we must determine whether such error “has or probably has adversely affected the substantial right of the appellant.” Rule 45A, Ala.R.App.P. See also Hall v. State, 820 So.2d 113, 121 (Ala.Crim.App.1999), aff'd, 820 So.2d 152 (Ala.2001). Although Bryant’s failure to object at trial does not preclude this Court from reviewing the issue in this case, it will nevertheless weigh against any claim of prejudice he makes on appeal. See Dill v. State, 600 So.2d 343 (Ala.Crim.App.1991), aff'd, 600 So.2d 372 (Ala.1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993).
In reviewing whether sufficient evidence was presented to warrant the submission of an aggravating circumstance for the jury’s consideration, this Court must determine whether the evidence was sufficient to support a finding that the aggravating circumstance existed in this case. See McWilliams v. State, 640 So.2d 982, 997 (Ala.Crim.App.1991), aff'd in part, remanded on other grounds in part, 640 So.2d 1015 (Ala.1993), cert. denied, 516 U.S. 1053, 116 S.Ct. 723, 133 L.Ed.2d 675 (1996).
Here, the State presented evidence from Ricky Vickers that after Bryant killed Hollis, he took Hollis’s cellular telephone and sold it for crack cocaine. Vickers testified that Bryant also attempted to sell Hollis’s automobile “for money or whatever he could get out of it.” (R. 348-49.) As this Court held in Bryant’s first appeal, this evidence was sufficient to establish the aggravating circumstance that the murder of Hollis was committed for pecuniary gain. See Bryant v. State, 951 So.2d 702, 724 (Ala.Crim.App.1999), rev’d on other grounds, Ex parte Bryant, 951 So.2d 724 (Ala.2002). Since our decision in Bryant, this Court has recognized that this aggravating circumstance may be used when the capital offense charged was not robbery-murder. See, e.g., Hodges v. State, 856 So.2d 875, 891 (Ala.Crim.App.2001), aff'd, 856 So.2d 936 (Ala.2003). Here, Bryant was charged with the capital offense of kidnapping-murder, but not with robbery- . murder. Accordingly, the circuit court did not err in submitting this aggravating circumstance to the jury for its consideration.
Moreover, Bryant’s claim that this aggravating circumstance was established by hearsay evidence is without merit. Vick-ers’s testimony established that he was present and that he witnessed Bryant sell *746 Hollis’s cellular telephone and later attempt to sell Hollis’s automobile. Thus, his testimony did not constitute inadmissible hearsay. See Williams v. State, 627 So.2d 985, 991 (Ala.Crim.App.1991), aff'd, 627 So.2d 999 (Ala.1993).
VI.
Bryant also argues that the circuit court “improperly instructed the jury that the aggravating circumstances of a murder committed in the course of a kidnapping was made out as a matter of law.” Again, because this claim was not raised at trial, we will review it under the plain-error standard.
Although Bryant makes several broad constitutional challenges to Alabama’s death penalty statute, it appears that the gist of his argument is an attack on what this Court has referred to as “double counting,” that is, the use of an element of the capital offense as an aggravating circumstance. Alabama appellate courts have repeatedly rejected attacks on the constitutionality of this practice. See, e.g., Ex parte Windsor, 683 So.2d 1042, 1060 (Ala.1996); Ferguson v. State, 814 So.2d 925, 956-68 (Ala.Crim.App.2000), aff'd, 814 So.2d 970 (Ala.2001); Smith v. State, 756 So.2d 892, 943 (Ala.Crim.App.1998), aff'd, 756 So.2d 957 (Ala.2000). More recently, we have rejected claims that “double counting” violated Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). See, e.g., Ex parte Waldrop, 859 So.2d 1181, 1188 (Ala.2002); Deardorff v. State, [Ms. CR-01-0794, June 25, 2004] - So.2d - (Ala.Crim.App. 2004). Accordingly, this claim is without merit.
To the extent that Bryant contends that the death penalty in Alabama is imposed arbitrarily or that it is “overinclu-sive,” his claim must likewise fail. Section § 13A-5-53(a), Ala.Code 1975, mandates in every case in which the death penalty is imposed an automatic review by this Court, under the plain-error standard, regarding the propriety of the trial court’s imposition of the death penalty. In short, Alabama’s death penalty is neither arbitrary nor overinclusive. Thus, this claim must fail.
VII.
Bryant argues that the circuit court’s sentencing order is “fatally deficient” based on, he claims, the court’s “failure to discuss and weigh the specific mitigating circumstances presented by the evidence.” (Bryant’s brief, p. 56.)
Section § 13A-5-47(d), Ala.Code 1975, provides, in pertinent part, that “the trial court shall enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in Section 13A-5-49, each mitigating circumstance enumerated in Section 13A-5-51, and any additional mitigating circumstances offered pursuant to Section 13A-5-52.”
We have carefully reviewed the circuit court’s sentencing order. The portion of the court’s sentencing order addressing mitigation is divided into two parts. The first part lists each of the mitigating circumstances set out in § 13A-5-51, concluding that none of the statutory mitigating circumstances are present in this case. The second part of the court’s discussion of mitigation addresses the existence of nonstatutory mitigating circumstances, as provided in § 13A-5-52, Ala.Code 1975. The court’s sentencing order noted that Bryant had presented evidence of 47 non-statutory mitigating circumstances,[2] “all of which the Court finds there is at least some evidence in support thereof.” (C. *747 267.) Contrary to Bryant’s claim, our decision in Apicella v. State, 809 So.2d 841 (Ala.Crim.App.2000), does not stand for the proposition that the trial court is required to “state the relative weight assigned to each [mitigating circumstance] or to each category.” (Bryant’s brief, p. 57.) Indeed, Apicella is factually distinguishable from the present case in that the court in Apicella failed to list all of the statutory mitigating circumstances and any nonstatutory mitigating circumstances offered by the defendant. We remanded that case for the trial court to enter a new sentencing order. Although the degree of detail contained in the new sentencing order in Apicella is admirable — particularly when, as in that case, the trial court elects to override the jury's recommendation of life imprisonment without parole and imposes the death penalty — this degree of detail is not required in every case. The court’s findings as to both the statutory mitigating circumstances and the nonstatu-tory mitigating circumstances were sufficient to satisfy the mandate of § 13A-5-47(d) in this case.
Although the trial court’s findings regarding mitigation are sufficient to comply with the provisions of § 13A-5-47(d), we note that the court’s findings regarding the aggravating circumstances fail to meet the requirements of § 13A-5-47(d), in that the court’s order lists only those aggravating circumstances the court found to be supported by the evidence, namely: (1) that the murder was committed during first-degree kidnapping and (2) that the murder was committed for pecuniary gain. This Court addressed a similar situation in Fortenberry v. State, 545 So.2d 129 (Ala.Crim.App.1988), aff'd, 545 So.2d 145 (Ala.1989). There, the trial court’s sentencing order made specific written findings as to only the aggravating circumstance it found to be supported by the evidence. Although we found the court’s sentencing order to be technically deficient, we found such error to be harmless:
“While the trial court’s sentencing order is defective, the errors are not so egregious or substantial as to require a new sentencing order. ‘The sole purpose of requiring that the trial judge, as the sentencing authority, make a written finding of the aggravating circumstance is to provide for appellate review of the sentence of death.’ Ex parte Kyzer, 399 So.2d 330, 338 (Ala.1981). ‘[T]he harmless error rule does apply in capital cases at the sentence hearing.’ Ex parte Whisenhant, 482 So.2d 1241, 1244 (Ala.1983).”
545 So.2d at 144. Because the circuit court’s findings regarding the existence of the aggravating circumstances it found to exist in this case is sufficient for this Court to carry out its appellate review, a remand is not warranted. However, we note — as we did in Fortenberry: “ ‘the safer practice would have been for the trial judge to simply follow the verbiage of the statute in negating aggravating circumstances.’ Berard v. State, 402 So.2d 1044, 1051 (Ala.Cr.App.1980).” 545 So.2d at 144.
VIII.
Bryant next makes a general argument that Alabama’s death penalty is unconstitutional, stating that it “violates rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution as well as [Art. I,] Sections 6 and 15 of the Alabama Constitution of 1901.” (Bryant’s brief, p. 58.) Further, Bryant argues, “any method of execution, including lethal injection, cannot meet the standard set out in [Zant v. Stephens, 462 U.S. 862 (1983); Eddings v. Oklahoma, 455 U.S. 104 (1982); and Furman v. Georgia, 408 U.S. 238 (1972) ].”
We note that Alabama’s statutory death-penalty scheme has repeatedly been *748 upheld against constitutional challenges. A comprehensive listing of the cases dealing with these challenges can be found in Travis v. State, 776 So.2d 819, 873 (Ala.Crim.App.1997), aff'd, 776 So.2d 874 (Ala.2000), cert. denied, 531 U.S. 1081, 121 S.Ct. 785, 148 L.Ed.2d 681 (2001). Moreover, we know of no authority in support of the general proposition that death by lethal injection violates a defendant’s constitutional rights. Indeed, a number of jurisdictions have rejected such claims. See, e.g., Sims v. State, 754 So.2d 657, 668 (Fla.2000); State v. Carter, 89 Ohio St.3d 593, 608, 734 N.E.2d 345 (2000); Ritchie v. State, 809 N.E.2d 258, 262 (Ind.2004); Wheeler v. Commonwealth, 121 S.W.3d 173, 186 (Ky.2003).[3] Today, we join these jurisdictions in holding that death by lethal injection is not per se cruel and unusual punishment.
IX.
While this case was pending review by the Alabama Supreme Court, the United States Supreme Court released Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) — two cases that dramatically impacted death-penalty cases throughout the United States. Because Bryant’s case was not final when Ring was released, we have applied Ring to this appeal.[4] See Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
In Ring, the United States Supreme Court applied its earlier holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to death-penalty cases and held that “[cjapi-tal defendants ... are entitled to a jury determination on any fact on which the legislature conditions an increase in their maximum punishment.” Ring, 536 U.S. at 589, 122 S.Ct. 2428.
Bryant argues that Ring v. Arizona requires that the aggravating circumstances be set out in the indictment returned against him. Further, he argues, Ring requires that the accused be provided notice of the aggravating circumstances upon which the State intends to rely. The State counters by arguing the Bryant’s death sentence complies with applicable Alabama law and that nothing in Ring requires the State to include the aggravating circumstances in the indictment or to give an accused notice of the aggravating circumstances upon which the State intends to rely.
In several recent decisions, both this Court and the Alabama Supreme Court have agreed with the State’s rationale that Ring did not invalidate Alabama’s death-penalty statute, which vests the ultimate sentence determination in the hands of the trial judge and not a jury. See, e.g., Ex parte Hodges, 856 So.2d 936 (Ala.2003); Ex parte Waldrop, 859 So.2d 1181 (Ala.2002); Duke v. State, 889 So.2d 1, 41 (Ala.Crim.App.2002) (opinion on return to remand), *749 cert. granted, sentence of death vacated pursuant to Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), 544 U.S. 901, 125 S.Ct. 1588, 161 L.Ed.2d 270 (2005); Turner v. State, 924 So.2d 737 (Ala.Crim.App.2002); Stallworth v. State, 868 So.2d 1128, 1178 (Ala.Crim. App.2001) (opinion on return to second remand). In each of these cases, we recognized the narrowness of the holding in Ring, noting that “[t]he Ring Court held that any aggravating circumstance that increased a sentence to death must be proved to a jury beyond a reasonable doubt”; however, we noted that the Ring Court “did not reach the question whether judicial sentencing or judicial override was constitutional.” Stallworth v. State, 868 So.2d at 1183 (opinion on return to second remand). Indeed, we quoted the following language from a footnote in Ring:
“ ‘Ring’s claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him. No aggravating circumstance related to past convictions in his case; Ring therefore does not challenge Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which held that the fact of prior conviction may be found by the judge even if it increases the statutory maximum sentence. He makes no Sixth Amendment claim with respect to mitigating circumstances. See Apprendi v. New Jersey, 530 U.S. 466, 490-91, n. 16, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (noting “the distinction the Court has often recognized between facts in aggravation of punishment and facts in mitigation” (citation omitted [in Ring])). Nor does he argue that the Sixth Amendment required the jury to make the ultimate determination whether to impose the death penalty. See Proffitt v. Florida, 428 U.S. 242, 252, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (plurality opinion) (“[I]t has never [been] suggested that jury sentencing is constitutionally required.”). He does not question the Arizona Supreme Court’s authority to reweigh the aggravating and mitigating circumstances after that court struck one aggravator. See Clemons v. Mississippi, 494 U.S. 738, 745, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). Finally, Ring does not contend that his indictment was constitutionally defective. See Apprendi, 530 U.S., at 477, n. 3, 120 S.Ct. 2348, 147 L.Ed.2d 435 (Fourteenth Amendment “has not ... been construed to include the Fifth Amendment right to ‘presentment or indictment of a Grand Jury’ ”).’ ”
Stallworth v. State, 868 So.2d at 1183-84 (quoting Ring, 536 U.S. at 597 n. 4, 122 S.Ct. 2428) (emphasis added).
This Court, in Stallworth v. State, specifically rejected an argument virtually identical to Bryant’s — namely, that “the indictment [against him] was void because it failed to include in the indictment the aggravating circumstances” that supported the capital offense. 868 So.2d at 1186. We rejected Stallworth’s argument, holding that neither Ring v. Arizona nor Apprendi v. New Jersey modified prior Alabama caselaw, “which holds that aggravating circumstances do not have to be alleged in the indictment.” 868 So.2d at 1186. The indictment returned against Bryant advised him of the crime with which he was charged — the capital offense of murder during kidnapping, in violation of § 13A-5-40(a)(l), Ala.Code 1975 — and set forth the elements of the offense that the State was required to prove. Included in the indictment was the aggravating circumstance of kidnapping in the first degree, thus placing Bryant on notice that, if convicted, he could be facing a death sentence. Because this single aggravating circumstance placed Bryant on notice that, if convicted of the charged offense he *750 could be facing a potential death sentence, the trial court correctly denied Bryant’s request that the State be required to amend the indictment so that it included all of the aggravating circumstances the State intended to prove at trial.
Likewise, neither Ring v. Arizona nor Apprendi v. New Jersey requires that an accused be provided with advance notice of all aggravating circumstances upon which the State intends to rely. Indeed, this Court has stated the following with regard to the other enumerated aggravating circumstances listed in § 13A-5-49 that are not elements of a capital offense:
“The aggravating circumstances enumerated in § 13A-5-49 that may lead to the imposition of the death penalty in a capital case are not elements of the offense and are not required to be set forth in the indictment. Dobard v. State, 435 So.2d 1338, 1347 (Ala.Cr.App. 1982), aff'd, 435 So.2d 1351 (Ala.1983), cert. denied, 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984). A defendant has no right to advance notice of the state’s intention to rely on any of the aggravating circumstances. Clark v. Dugger, 834 F.2d 1561, 1566 (11th Cir. 1987), cert. denied, 485 U.S. 982, 108 S.Ct. 1282, 99 L.Ed.2d 493 (1988); Knotts v. State, 686 So.2d 431 (Ala.Cr. App.[1995]); Ruffin v. State, 397 So.2d 277, 282 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981). The list of aggravating circumstances in § 13A-5^49 is exclusive and puts the defendant charged with a capital felony on notice of those circumstances against which the defendant may be required to defend. This statutory notice satisfies constitutional requirements.”
Bush v. State, 695 So.2d 70, 87 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997). Cf. Arthur v. State, 711 So.2d 1031 (Ala.Crim.App.1996), aff'd, 711 So.2d 1097 (Ala.1997) (when aggravating circumstances relied on by the State are elements of the capital offense they must be charged in the indictment).
Here, Bryant was given notice of the aggravating circumstance that constituted an element of the capital offense with which he was charged. Moreover, as noted by the State, because this was Bryant’s second sentencing hearing, he had the added benefit of knowing precisely which aggravating circumstances the State would rely upon — the same aggravating circumstances it used at Bryant’s original sentencing hearing. Accordingly, the circuit court correctly denied Bryant’s request for such notice.
X.
Bryant argues that the circuit court erred in denying his request for special verdict forms “as to each aggravator claimed by the State” and “as to each aggravator unanimously found by the jury.” (Bryant’s brief, p. 47.) He contends that the United States Supreme Court’s decisions in Apprendi and Ring mandate the use of such verdict forms.
This Court has rejected similar claims in previous death-penalty decisions. See, e.g., Walker v. State, 932 So.2d 140, 147 (Ala.Crim.App.2004); Adams v. State, [Ms. CR-98-0496, August 29, 2003] — So.2d -,-(Ala.Crim.App.2003). The Alabama Supreme Court has likewise rejected this argument. The Supreme Court has held, in numerous cases, that the jury’s verdict finding a defendant guilty of capital murder during the guilt phase of his trial indicated that the jury had unanimously found a proffered aggravating circumstance included within the § 13A-5-40(a), Ala.Code 1975, -definition of the particular capital-murder offense charged in the indictment. See, e.g., Ex parte Hodges, 856 *751 So.2d 936 (Ala.2003); Ex parte Waldrop, 859 So.2d 1181 (Ala.2002); Stallworth v. State, 868 So.2d 1128 (Ala.Crim.App.2001) (opinion on return to second remand), cert. denied, 868 So.2d 1189 (Ala.2003). But see Ex parte McGriff, 908 So.2d 1024, 1039 (Ala.2004) (authorizing prospective use of a penalty-phase special interrogatory). Moreover, in Ex parte McNabb, 887 So.2d 998 (Ala.2004), the Supreme Court held that even a nonunanimous recommendation of death by the jury proved that the jury, including the jurors who voted against the recommendation of death, had unanimously found the existence of a proffered aggravating circumstance, even though the circumstance was not included within the definition of the particular capital-murder offense charged in the indictment, because the trial court had specifically instructed the jury that it could not proceed to a vote on whether to impose the death penalty unless it had already unanimously agreed that the aggravating circumstance existed.
In its instructions on aggravating circumstances and mitigating circumstances, the circuit court here instructed the jury, in pertinent part, as follows:
“Now, an aggravating circumstance is a circumstance specified by law which indicates or tends to indicate that the defendant should be sentenced to death. A mitigating circumstance is any circumstance which indicates or tends to indicate that the defendant should be sentenced to life imprisonment without parole instead of death. The issue at this sentencing hearing concerns the existence of aggravating and mitigating circumstances which you should weigh against each other to determine the punishment that you recommend. In recommending punishment, you must determine whether any aggravating circumstance or circumstances exists. If you determine one or more do exist, then you must determine if the — anyway, you must determine whether one or more aggravating circumstances exists. And then, you must determine if one or more mitigating circumstances exist. In making these determinations, you may consider evidence from the— from any aspect of the trial that’s been presented.
“Alabama law provides a list of aggravating circumstances which a jury may consider in recommending punishment. The jury must first be convinced beyond a reasonable doubt that one or more aggravating circumstances exists. And if you are not so convinced, you must recommend a sentence of life without parole. That is true even if you find that no mitigating circumstances exist.
“This case presents two aggravating circumstances which you may consider if the evidence convinces you beyond a reasonable doubt of their existence. The mere fact that I have included them in these instructions does not mean that I believe that the evidence proves their existence beyond a reasonable doubt. Only you can decide that issue.
“The two aggravating circumstances that the State relies on are,- number one, that the capital offense was committed while the defendant was engaged in the commission of or an attempt to commit kidnapping. The other aggravating circumstance which the State relies on is that the capital offense was committed for pecuniary gain.
“Now, in this case, the — you may consider the fact that the defendant has been found guilty of capital murder committed during a kidnapping. Before you could consider recommending the death penalty, each and every one of you would have to be convinced beyond a reasonable doubt that the State has proved at least one of the aggravating *752 circumstances which I have listed for you.”
(R. 731-33.) (Emphasis supplied.) Thereafter, the circuit court went on to instruct the jury at length regarding aggravating circumstances, mitigating circumstances, and all other applicable principles of law that it was required to consider before returning its recommendation. However, the court returned to the requirement that the jury must unanimously find the existence of at least one aggravating circumstance before it could proceed to a vote on whether to impose the death penalty, reminding the jury:
“Now, as to the aggravating circumstances that the defendant committed the capital offense during a kidnapping, a jury has found [Bryant] guilty of that event, because that is the charge in the indictment, that he committed the capital offense while committing a kidnapping. However, the former jury has not specifically found him guilty of committing the capital offense for pecuniary gain. That is within your realm. You have to find beyond a reasonable doubt that he did that before you could consider — when I say you, not 10 of you — but all 12 of you must be convinced beyond a reasonable doubt — in other words, you have that fresh decision that you can make on that issue, yea or nay. You are not bound by a prior jury on that. They have not determined that.”
(R. 764-75.) (Emphasis supplied.)
Because the jury recommended by a vote of 11-1 that Bryant be sentenced to death, it is clear that it unanimously found the existence of at least one aggravating circumstance. Accordingly, no basis for reversal exists as to this claim.
XI.
Bryant’s final argument is that “[t]he cumulative effect of the errors noted requires a remand for a new penalty-phase trial.” (Bryant’s brief, p. 58.)
We have reviewed each of the claims raised by Bryant in brief. As discussed in Part VII of this opinion, we noted that the circuit court failed to enter specific written findings concerning the existence or nonexistence of each aggravating circumstance set out in § 13A-5-49, but entered findings only as to those aggravating circumstances it found applicable in Bryant’s case. We found that this “technical defect” in the sentencing order was not so egregious or substantial as to require a new sentencing order. As the Alabama Supreme Court noted in Ex parte Woods, 789 So.2d 941 (Ala.2001):
“[W]hile, under the facts of a particular case, no single error among multiple errors may be sufficiently prejudicial to require reversal under Rule 45, if the accumulated errors have ‘probably injuriously affected substantial rights of the parties,’ then the cumulative effect of the errors may require reversal. See Rule 45, Ala.R.App.P.”
789 So.2d at 943 n. 1. Because there are no other errors to consider in conjunction with the sentencing-order error, there can be no cumulative effect of errors. Thus, reversal is not warranted.
XII.
As required by § 13A-5-53, Ala. Code 1975, we will now address the propriety of Bryant’s death sentence.
Bryant was indicted and convicted of murder committed during a kidnapping in the first degree. § 13A-5-40(a)(l), Ala. Code 1975. The jury, by a vote of 11 to 1, recommended that Bryant be sentenced to death.
The record reflects that Bryant’s sentence was not imposed under the influence *753 of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(l), Ala. Code 1975.
The circuit court found that the aggravating circumstances outweighed the mitigating circumstances and mandated that Bryant be sentenced to death. The court found the existence of two aggravating circumstances: (1) that the capital offense was committed while Bryant was engaged in the commission of first-degree kidnapping, see § 13A-5-49(4), Ala.Code 1975; and (2) that the murder was committed for pecuniary gain, see § 13A-5^9(6), Ala. Code 1975. The circuit court found the existence of none of the mitigating circumstances enumerated in § 13A-5-51, Ala. Code 1975. However, the court found “some evidence” of the existence of 47 nonstatutory mitigating circumstances.[5] The circuit court found that the aggravating circumstances outweighed the mitigating circumstances and mandated that Bryant be sentenced to death.
*754 The circuit court’s finding that the aggravating circumstance that the murder was committed during the commission of first-degree kidnapping is supported by the evidence. The circuit court’s finding that the murder was committed for pecuniary or other valuable consideration is likewise supported by the record, as discussed in Part V of this opinion.
The fact that the circuit court found the existence of two aggravating circumstances and “some evidence” of numerous nonstatutory mitigating circumstances does not indicate that the court’s decision to sentence Bryant to death was erroneous. In Bush v. State, 695 So.2d 70 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997), this Court stated:
“ ‘[T]he sentencing authority in Alabama, the trial judge, has unlimited discretion to consider any perceived mitigating circumstances, and he can assign appropriate weight to particular mitigating circumstances. The United States Constitution does not require that specific weights be assigned to different aggravating and mitigating circumstances. Murry v. State, 455 So.2d 53 (Ala.Cr.App.1983), rev’d on other grounds, 455 So.2d 72 (Ala.1984). Therefore, the trial judge is free to consider each case individually and determine whether a particular aggravating circumstance outweighs the mitigating circumstances or vice versa. Moore v. Balkcom, 716 F.2d 1511 (11th Cir.1983). The determination of whether the aggravating circumstances outweigh the mitigating circumstances is not a numerical one, but instead involves the gravity of the aggravation as compared to the mitigation.’
“Clisby v. State, 456 So.2d 99, 102 (Ala.Cr.App.1983).”
695 So.2d at 94. As the Alabama Supreme Court stated in Ex parte Cook, 369 So.2d 1251, 1257 (Ala.1978): “We can readily envision situations where several aggravating circumstances may not be sufficient to outweigh only one mitigating circumstance and, on the other hand, where numerous mitigating circumstances may be present but opposed to one aggravating circumstance so outrageous as to justify the death penalty.” Accord Carr v. State, 640 So.2d 1064, 1074-75 (Ala.Crim.App.1994); Magwood v. State, 548 So.2d 512, 514 (Ala.Crim.App.), aff'd, 548 So.2d 516 (Ala.1988), cert. denied, 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989).
We find this to be the case here. The sentencing order indicates that the circuit court considered the mitigating evidence Bryant offered but determined that mitigation was outweighed by the aggravating circumstances and sentenced Bryant to death. Its decision is supported by the record, and we agree with the circuit court’s findings.
Section 13A-5-53(b)(2), Ala.Code 1975, requires us to independently weigh the aggravating and mitigating circumstances to determine the propriety of Bryant’s death sentence. After independently weighing the aggravating circumstances and the mitigating circumstances, we find that the death sentence is appropriate in this case.
As required by § 13A-5-53(b)(3), Ala.Code 1975, we must determine whether Bryant’s death sentence was disproportionate or excessive when compared to the penalties imposed in similar cases. Bryant killed Donald Hollis during a kidnapping in the first degree. Similar crimes have been punished by death on numerous occasions. See, e.g., Ex parte Perkins, 851 So.2d 453 (Ala.2002), cert. denied 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 55 (2003); Ex parte Hagood, 777 So.2d 214 (Ala.1999); Ziegler *755 v. State, 886 So.2d 127 (Ala.Crim.App. 2003), cert. denied, 886 So.2d 127 (Ala.), cert. denied, 543 U.S. 863, 125 S.Ct. 194, 160 L.Ed.2d 106 (2004); Loggins v. State, 771 So.2d 1070 (Ala.Crim.App.1999), aff'd, 771 So.2d 1093 (Ala.2000); Boyd v. State, 715 So.2d 825 (Ala.Crim.App.1997), aff'd, 715 So.2d 852 (Ala.), cert. denied, 525 U.S. 968, 119 S.Ct. 416, 142 L.Ed.2d 338 (1998); Dallas v. State, 711 So.2d 1101 (Ala.Crim. App.1997), aff'd, 711 So.2d 1114 (Ala.), cert. denied, 525 U.S. 860, 119 S.Ct. 145, 142 L.Ed.2d 118 (1998); Trawick v. State, 698 So.2d 151 (Ala.Crim.App.1995), aff'd, 698 So.2d 162 (Ala.), cert. denied, 522 U.S. 1000, 118 S.Ct. 568, 139 L.Ed.2d 408 (1997); Jenkins v. State, 627 So.2d 1034 (Ala.Crim.App.1992), aff'd, 627 So.2d 1054 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1388, 128 L.Ed.2d 63 (1994).
Finally, as required by Rule 45A, Ala. R.App.P., we have searched the record for any error that may have adversely affected Bryant’s substantial rights and have found none. Bryant’s sentence of death for the murder of Donald Hollis is due to be, and it is hereby, affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur.

. This case was originally assigned to another judge on the Court of Criminal Appeals. It was reassigned to Judge Wise on January 16, 2001.

. Rule 39, Ala.R.App.P., was amended, effective May 19, 2000, as to death-penalty cases, changing the standard for certiorari review of criminal cases in which the death penalty is imposed. At the time Bryant's petition was filed, Rule 39(c) provided that a petition for a writ of certiorari to the Supreme Court in a case in which the death penalty was imposed would be granted as a matter of right.

. In an effort to protect the anonymity of the challenged jurors, we have used their initials.

. See Part XII for a listing of these nonstatu-tory mitigating circumstances.

. Indeed, the only case we know of successfully challenging execution by lethal injection involved an inmate’s individualized claim that death by lethal injection would violate the Eighth Amendment's prohibition against cruel and unusual punishment because he suffered from collapsed veins. See Nelson v. Campbell, 541 U.S. 637, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004). Biyant makes no such individualized claim. Thus, he is entitled to no relief on his claim that death by lethal injection constitutes cruel and unusual punishment.

. Atkins addresses the rights of mentally retarded persons who have been sentenced to death. Nothing in the record suggests that Bryant was mentally retarded. Indeed, the record indicated that Bryant’s full-scale IQ was 85, within the average range of intelligence. (R. 643.) Thus, Atkins has no application to this case.

. These nonstatutory mitigating circumstances were listed in “Exhibit 1” attached to the court’s sentencing order, as follows: (1) that Bryant's father was an alcoholic; (2) that Bryant's mother was an alcoholic; (3) that Bryant was respectful to others and inspired respect in them; (4) that Bryant was kind to others; (5) that Bryant was considerate of others; (6) that Bryant was protective of others; (7) that Bryant was loyal to others; (8) that Bryant inspired loyalty in his friends; (9) that Bryant counseled children to “go straight”; (10) that Bryant did not want to be a burden on his family; (11) that Bryant has an outside support system; (12) that Bryant experienced a lack of parental involvement in his upbringing; (13) that Bryant gave up the right to be silent when questioned by law enforcement officers; (14) that Bryant has a conscience; (15) that Biyant behaved appropriately during the trial; (16) that Biyant was traumatized by his father’s terminal illness; (17) that Bryant was traumatized by his father's death when Biyant was at a critical stage in his own development; (18) that Bryant is a devoted father; (19) that Bryant is dependable; (20) that Bryant was not removed by child-welfare authorities from a home in which he was receiving an inappropriate upbringing; (21) that Biyant suffered from “fetal alcohol effects” (a milder version of fetal alcohol syndrome); (22) that Biyant was never referred to a psychiatrist for appropriate help for depression; (23) that Bryant was never referred to a psychiatrist for appropriate help and medication for anxiety; (24) that Bryant was never referred to a psychiatrist for appropriate help and medication for impulsivity; (25) that Bryant will have the emotional support of his family while in prison; (26) that Biyant was never referred for long-term intensive counseling in regard to the death of his father; (27) that Biyant had no suitable parenting from his mother while growing up; (28) that despite his academic problems, Biyant’s parents did nothing to get Biyant available help in tutoring or after-school programs; (29) that Bryant was never referred for drug- or alcohol-related rehabilitation as a juvenile, although his problems in that regard had already manifested themselves; (30) that Bryant grew up with a sense of insecurity; (31) that Bryant had used drugs and/or alcohol on the night of the murder; (32) that Bryant does not have an antisocial personality; (33) that Bryant does not suffer from “factitious syndrome” (faking physical ailments); (34) that Bryant is generous; (35) that Bryant continues to try to better himself; (36) that Bryant is emotionally isolated from his mother because of her alcoholism and other factors; (37) that Bryant begged to keep his father alive on life support; (38) that Biyant had inadequate or inappropriate home discipline; (39) that while Bryant was a child, Biyant’s father instilled inappropriate values in Bryant, such as playing football in a way specifically designed to injure the other players; (40) that Bryant was forced to be tough in order to survive as a result of his home and neighborhood environments; (41) that Biyant’s family did not follow up on suggested family and individual therapy; (42) that Bryant is sensitive; (43) that Bryant is emotional; (44) that Bryant encouraged others to further their education; (45) that Bryant cooperated during trial-related testing and evaluation; (46) that Biyant was good to children, including family members and the children of his girlfriend; and (47) that Bryant is a human being. The circumstances were taken from Bryant's requested jury charge 15 (C. 269-72), which was included as a part of the court’s oral charge. (R. 736-40.)